# LOUISE GRABOWSKI ET AL. *v.* CITY OF BRISTOL ET AL.
## (AC 21206)

Foti, Flynn and Peters, Js.

Argued May 9—officially released July 24, 2001

*Frank B. Cochran*, with whom, on the brief, was *Peter B. Cooper*, for the appellants (plaintiffs).

*Ann T. Baldwin*, assistant corporation counsel, for the appellees (named defendant et al.).

*James Ziogas, Jr.*, for the appellee (defendant Forestville Little League, Inc.).

*Mark Ziogas*, for the appellee (defendant Fleet Bank, N.A.).

*Opinion*

PETERS, J. This case arises out of a testamentary charitable trust that conveyed a designated parcel of property to the city of Bristol. In compliance with the will, the city has used the property for park or recreational purposes. The question before us is whether the city violated a clause in the will precluding use of the conveyed property for recreational purposes if the conveyed property was contiguous to other city owned property that was being used for recreational purposes. The trial court held that this provision was satisfied by extensive fencing of the conveyed property. We agree.

The plaintiffs, Louise Grabowski and Mary Mikulak, brought this action against the defendant city of Bristol and others[1] to obtain injunctive relief from the defendants. In the plaintiffs' amended complaint, they

---

[1] The other defendants who participated in the trial of this case were the board of park commissioners of the city of Bristol, Attorney General Richard Blumenthal, Forestville Little League, Inc., Fleet Bank, N.A., and the superintendent of parks of the city of Bristol. The plaintiffs, however, withdrew their complaint against the superintendent on March 10, 1998.

The attorney general was made a party pursuant to General Statutes § 3-125, which defines the duties of the attorney general. The attorney general elected not to participate in this action on the ground that "this is chiefly a local dispute between the city of Bristol and some of its residents, which does not significantly affect the public interest in the protection of gifts, bequests and devises intended for charitable or public purposes . . . ." Because the plaintiffs did not withdraw their complaint as to the attorney general, however, the attorney general remained a party.

alleged, inter alia, that the defendants had failed to comply with certain provisions of Constant Y. Peck's will (Peck will) that related to the establishment of the charitable Constant Y. Peck trust and of the recreational facility now known as Peck Park.[2] Specifically, the plaintiffs maintained that the city's use of adjacent property for three Little League baseball fields made it impermissible for the city to permit Little League baseball in Peck Park.

## STANDING

Before the merits of the plaintiffs' amended complaint could be reached, the court, *Holzberg, J.*, denied a motion to dismiss filed by the defendant Fleet Bank, N.A. The motion alleged that the court had no subject matter jurisdiction over this case because the plaintiffs did not have standing to pursue their claims. See *In re Jonathan M.*, 255 Conn. 208, 217, 764 A.2d 739 (2001); *Fish Unlimited* v. *Northeast Utilities Service Co.*, 254 Conn. 21, 31, 755 A.2d 860 (2000); *Community Collaborative of Bridgeport, Inc.* v. *Ganim*, 241 Conn. 546, 552–53, 698 A.2d 245 (1997).

Although the issue has not been raised again in the defendants' appellate briefs, we must undertake an independent review of the question of standing. Appellate courts, as well as trial courts, must examine an issue implicating subject matter jurisdiction. The question of standing may be raised by any of the parties, or by the court, sua sponte, at any time during judicial proceedings. *In re Michelle G.*, 52 Conn. App. 187, 190, 727 A.2d 226 (1999), and cases therein cited.

---

[2] At trial, the plaintiffs argued, in addition to their will construction claim, that the defendants had created a nuisance, that the defendants improperly had allowed a person with a conflict of interest to participate in their decision-making and that the use of the conveyed property for Little League baseball wrongfully had excluded other members of the public. The court ruled against the plaintiffs on all counts of their complaint. These additional claims have not been pursued on appeal.

In denying the motion to dismiss filed by Fleet Bank, N.A., the court ruled that the plaintiffs had standing under the circumstances of this case. Ordinarily, it is the attorney general who has the responsibility to monitor charitable trusts. In his absence, the court determined that the allegations of the plaintiffs' complaint demonstrated that the plaintiffs had a special interest in Peck Park because, unlike members of the general public, their property adjoined Peck Park.[3] We agree.

## THE MERITS

After an evidentiary hearing, the court, *Hon. Julius J. Kremski*, judge trial referee, decided the case on its merits and found for all the defendants on all the counts of the amended complaint. With respect to the claim that the defendants' use of Peck Park violated the Peck will, the court recognized that the plaintiffs had suffered some adverse consequences as a result of the Little League baseball games. It held, nonetheless, that the plaintiffs could not prevail because, as a matter of law, the defendants had complied with the terms of the Peck will. The court had no occasion to, and did not, address any independent basis for the plaintiffs' alleged right to equitable relief.[4] The plaintiffs have appealed from the adverse judgment of the court.

The proper construction of the Peck will is the only question before us in this appeal. The plaintiffs' principal claim is that the court improperly construed the

[3] Allegations in a complaint must be construed in their most favorable light for pretrial purposes; *Reynolds* v. *Soffer*, 183 Conn. 67, 68, 438 A.2d 1163 (1981); and the plaintiffs' allegations demonstrated their standing to question whether the Peck will was being enforced properly. See, e.g., *Doe* v. *Doe*, 163 Conn. 340, 345, 307 A.2d 166 (1972).

[4] All the court said on this issue was that the activities of the defendants were not so unreasonable and not so intrusive that the defendants should be enjoined from continuing Little League activities in Peck Park. Because the court's denial of the plaintiffs' request for an injunction depended entirely on the court's ruling on the plaintiffs' legal claims, it did not undertake an independent analysis to balance the equities.

noncontiguity clause in the Peck will. Our standard of review of such a question is well established. "The construction of a will presents a question of law to be determined in light of facts which are found by the trial court or are undisputed or indisputable." (Internal quotation marks omitted.) *Canaan National Bank* v. *Peters*, 217 Conn. 330, 335, 586 A.2d 562 (1991). The plaintiffs do not dispute the facts found by the court. We, therefore, undertake plenary review of the plaintiffs' legal claim that Peck Park's use for Little League baseball games is forbidden by the provision in the Peck will that Peck funded property should "not be contiguous" with other city property that is used "for recreational or park purpose[s]."[5]

The court's memorandum of decision and the record provide the factual foundation for our analysis. The court made only two findings that are relevant to the plaintiffs' claims regarding the construction of the Peck will. One is that each of the plaintiffs owns a separate residence that adjoins Peck Park. The other is that Peck Park adjoins three city owned baseball fields that are separated from Peck Park property only by a chain-link fence.[6]

---

[5] Part IV of the Peck will bequeathed a residuary estate to Bristol Bank and Trust Company and to the then superintendent of parks of the city of Bristol. Among the restrictions on the use of this gift is clause (B) (4). That provision states that "the parcel to be acquired shall not be contiguous to any other park or area which is being used by the City of Bristol for recreational or park purpose[s]. This provision is inserted so as to prevent the possibility of the parcel ultimately being absorbed by some larger recreational area of the city."

[6] The court made other findings that, as far as we can tell, relate primarily to the plaintiffs' claim of nuisance. The court found that, as a result of the use of Peck Park for baseball, each of the plaintiffs had encountered problems with noise and with parking. It further found that the parking problem was exacerbated by those who used Peck Park to access the city owned property that abuts Peck Park. It also found, however, that the plaintiffs' problems had been partially addressed by maintenance of trees that served to create a sound and sight buffer of park activities. Finally, it found that whatever the adverse consequences to the plaintiffs might be, the plaintiffs' problems were outweighed by the fact that the defendants' use of Peck

In deciding that the plaintiffs could not prevail, the court relied principally on a 1977 decision by the Bristol Probate Court. Pursuant to General Statutes § 51-164s, in the absence of claims of fraud, the Probate Court decision was binding on the court. See *Lundborg* v. *Lawler*, 63 Conn. App. 451, 776 A.2d 519 (2001).

In 1977, the Bristol Probate Court approved the establishment of an endowment for a new park in memory of two members of the Peck family. Although the Probate Court made a number of rulings with respect to the management of Peck Park's endowment,[7] only one ruling is relevant at this juncture.

The Probate Court specifically addressed the noncontiguity clause in article IV (B) (4) of the Peck will. It concluded that this clause would be satisfied if the city, at its own expense, erected a chain-link fence around the contemplated park and placed an identifying marker at the entrance to the park. The Probate Court further concluded that, if these measures were taken, the defendant Forestville Little League, Inc., had authority, under the Peck will, to install a baseball field in Peck Park as long as the city retained control over the property. No appeal was taken from the judgment of the Probate Court.

Although the defendant city duly established Peck Park, fenced in Peck Park and built the contemplated marker, the defendant Forestville Little League, Inc., did not proceed immediately. It was not until 1992 that the defendant board of park commissioners approved the construction of a Little League baseball field in

---

Park was not unreasonable in light of the public policy supporting the recreational needs of children.

[7] The Probate Court determined that, because endowment funds were not needed for the acquisition of the Peck Park property, these funds could properly be used for maintenance of the park property. It also approved the role of the defendant Fleet Bank, N.A., as successor trustee for the endowment, on monitoring disbursements of these funds.

Peck Park. The defendant Forestville Little League, Inc., together with the city's park department, then installed the Little League baseball field on Peck Park property.

In their appeal from the court's decision construing the Peck will, the plaintiffs argue, in effect, that the 1977 Probate Court decision is no longer binding because of a change in circumstances. They claim that the court should have taken a fresh look, under the present circumstances, at whether Forestville's installation of the Little League baseball field in Peck Park violated the noncontiguity provision in the Peck will.[8] The court undertook such an inquiry, but it found that the 1977 Probate Court decision was still applicable.

On appeal, as they did at trial, the plaintiffs focus on the fact that the city property abutting Peck Park was used, in 1977, for a school yard adjacent to a city school, while, by 1992, it was used for three Little League baseball fields. Like the trial court, we are not persuaded that the city's intensification of its recreational facilities in the adjoining city property has any bearing on a determination of contiguity or noncontiguity under the Peck will. Also like the court, we are not persuaded that a change that creates a slightly greater risk of annexation violates the will's prohibition against possible absorption of Peck Park "into some larger recreational area of the city." The court noted that this possibility was attenuated by the fact that "the defendant city is aware of these restrictions." Further, the court noted that it was the Probate Court, and not the city, that had the authority to oversee disbursal of endowment funds for Peck Park. We agree.

---

[8] The plaintiffs also allude to their contention in their complaint that the chain-link fence has gates that deprive the fence from serving as a barrier that sufficiently separates Peck Park from city property that is used for recreational purposes. We have no basis for addressing the merits of this claim because the court made no factual findings on this subject.

We conclude, for the reasons stated, that the court properly construed the Peck will and properly determined that the defendants have complied with the will. In the absence of a showing that the defendants violated the Peck will, the trial court, and therefore this court, had no occasion to decide whether the plaintiffs were entitled to injunctive relief.

The judgment is affirmed.

In this opinion the other judges concurred.