STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-14-523

MERRILL WOODWORTH,
Personal Representative for
the ESTATE OF MERRILL P.
ROBBINS,

Plaintiff

ORDER ON MOTIONS
TO DISMISS

v.

CHEBEAGUE & CUMBERLAND
LAND TRUST, INC. and
INHABITANTS OF THE TOWN
OF CUMBERLAND,

6 MAY '15 AM8:29

Defendants

Two motions are before the court: (1) defendant Town of Cumberland's motion to dismiss plaintiff's complaint; and (2) defendant Chebeague & Cumberland Land Trust's motion to dismiss plaintiff's complaint. Both defendants challenge plaintiff's standing and argue that the case is not ripe for review. The Town also argues that the complaint must be dismissed to the extent it relates to the trail easement on the property because those disputes must be submitted to arbitration. For the following reasons, the motions are granted.

## FACTS

The following facts are taken from plaintiff's complaint and the conservation easement at issue. Moody v. State Liquor & Lottery Comm'n, 2004 ME 20, ¶ 10, 843 A.2d 43 (allowing court to consider public documents central to the claims in the complaint on a motion to dismiss). On December 23, 1997, Marion B. Payson executed the conservation easement at issue, which covers a 100-acre parcel of coastal land in Cumberland, Maine. (Compl. ¶ 6.) Defendant

Chebeague & Cumberland Land Trust (CCLT) is the holder of the easement. (Compl. ¶ 3.) CCLT is responsible for enforcing the terms of the easement. (Compl. ¶ 31; Town's Mot. to Dismiss, Ex. A, at 6-7.) One provision of the conservation easement concerns a public trail on the property and requires the parties to arbitrate specific disputes related to the trail. (Conservation Easement, at 28.)

The Estate owns a small portion of the original 100-acre parcel.[1] The remainder was conveyed to Spears Hill, LLC. (Compl. ¶ 7.) Spears Hill sold a portion of the property to defendant Town of Cumberland. (Compl. ¶¶ 21-22.)

Plaintiff alleges the Town intends to construct a public facility on the property it owns and that construction would violate the terms of the conservation easement. (Compl. ¶¶ 23, 28.) Plaintiff alleges the Cumberland Planning Board approved a subdivision plan that approves a portion of the road that is part of the facility. (Compl. ¶ 48.) Plaintiff alleges that CCLT intends to allow the Town to construct the facility, despite having the enforcement power to block development. (Compl. ¶¶ 31-32.)

Plaintiff filed this suit to enforce the conservation easement and prevent the Town from constructing the facility. The issues before the court are whether plaintiff has standing to sue and whether the case is ripe for decision.

DISCUSSION

1. Standing

"Whether a party has standing to bring a claim is a jurisdictional question." N. E. Ins. Co. v. Young, 2011 ME 89, ¶ 11, 26 A.3d 794. The particular

---

1 This fact is not alleged in the complaint but plaintiff does not dispute it. (Pl.'s Opp. Town's Mot. at 7.)
2 The statute explains further that the Attorney General may initiate an action only in

2

interest or injury required for standing "and the source of that requirement—whether statutory- or common-law based—varies based on the type of claims being alleged." Bank of Am., N.A. v. Greenleaf, 2014 ME 89, ¶ 7, 96 A.3d 700. In general, litigants may not assert the rights of third parties. N. E. Ins. Co., 2011 ME 89, ¶ 11, 26 A.3d 794.

 a. Statutory Standing

Maine's law explicitly identifies those individuals who may bring a cause of action affecting a conservation easement:

> An action affecting a conservation easement may be brought or intervened in by:
>
>  A. An owner of an interest in the real property burdened by the easement;
>
>  B. A holder of the easement;
>
>  C. A person having a 3rd-party right of enforcement; or
>
>  D. The Attorney General . . . [2]

33 M.R.S. § 478(1)(A)-(D) (2014). Maine's statute is a modified version of the Uniform Conservation Easement Act (UCEA). See Unif. Conservation Easement Act § 3, 12 U.L.A. 184 (amended 2007). The UCEA also provides that an action affecting a conservation easement may be brought by "a person authorized by other law." Id. § 3(a)(4). The Maine Legislature chose to delete this section "because of concern that potential donors would be deterred from making a gift by the appearance that unknown persons, other than those named in the easement as holders and persons having a third-party right of enforcement

---

[2] The statute explains further that the Attorney General may initiate an action only in limited circumstances. 33 M.R.S. § 478(1)(D).

might, by this provision, have a right to bring an action to enforce or modify the easement." 33 M.R.S. § 478, Me. cmt.

In this case, CLLT is the holder and there are no third-party rights of enforcement in the conservation easement. Plaintiff argues that he has standing as "an owner of an interest in the real property burdened by the easement." Id. § 478(1)(A). Defendants argue that section does not confer standing to enforce the conservation easement on property owned by another individual. Plaintiff does not own any interest in the property where the Town proposes to site the facility.

In construing a statute, the court must "interpret the plain language by taking into account the subject matter and purposes of the statute, and the consequences of a particular interpretation." Dickau v. Vermont Mut. Ins. Co., 2014 ME 158, ¶ 21, 107 A.3d 621 (citation omitted). If the court determines that language in a statute is ambiguous, the court may look to legislative history and the underlying policy behind a statute to determine legislative intent. Fuhrmann v. Staples Office Superstore E., Inc., 2012 ME 135, ¶ 23, 58 A.3d 1083. "A statute is ambiguous if it is reasonably susceptible to different interpretations." Id. (quoting Estate of Joyce v. Commercial Welding Co., 2012 ME 62, ¶ 12, 55 A.3d 411).

In this case the language, "owner of an interest in the real property burdened by the easement," is ambiguous. The language could reasonably be interpreted to mean an owner of any property that is subject to the conservation easement or the language could be interpreted to mean only the owner of the particular property where the violation is alleged. The court, therefore, looks at the underlying policy and legislative intent regarding the statute in construing its language.

4

Maine's version of the UCEA is written to limit enforcement of the terms of an easement to the holder and those parties specifically given third-party rights of enforcement. As the Maine Comment explains, the act was intentionally designed to limit those private individuals who could enforce the terms of the easement and recognized that donors carefully choose a holder who will enforce the terms of the easement in a way that suits their goals. 33 M.R.S. § 478, Me. cmt.; see Gerald Korngold, Governmental Conservation Easements: A Means to Advance Efficiency, Freedom from Coercion, Flexibility, and Democracy, 78 Brook. L. Rev. 467, 500 (2013) (arguing that conservation easement holders should have the flexibility to pursue overarching conservation goals without facing suits from private parties).

The comment to the UCEA states that "[o]wners of interests in real property burdened by easements might wish to sue in cases where the easements also impose duties upon holders and these duties are breached by the holders." See Unif. Conservation Easement Act § 3, 12 U.L.A. 184, Commissioners' cmt. From this comment it appears that the section was written to protect the rights of property owners who are owed some duty by the holder under the conservation easement. For example, the holder of the conservation easement might be required to perform certain maintenance on a portion of the owner's property, as is the case here. (Conservation Easement, at 25) (requiring CCLT to manage and maintain the trail easement).) The section does not appear to have been written to give a property owner whose property is subject to a conservation easement the ability to enforce the easement for other property owners or serve as a backup enforcer when the holder refuses to exercise its obligations under the easement's terms.

Other jurisdictions have found that a neighboring property owner lacks standing to enforce a conservation easement on another's property, even where their own property is subject to the same easement. In McEvoy v. Polumbo, two neighboring property owners were both subject to the same conservation easement held by the town. No. CV-10-6002253S, 2011 Conn. Super. LEXIS 2939, at *2-3, (Nov. 16, 2011). Plaintiff attempted to enforce the conservation easement on the neighboring property after the town approved certain property uses that allegedly violated the conservation easement. Id. The court found that plaintiff lacked standing because Connecticut's conservation easement statute did not specifically give a private individual a cause of action. Id. at *6-7; see also Chase v. Trust for Pub. Land, No. 329075, 2008 Mass. LCR LEXIS 27, at *25-27 (Mar. 11, 2008) (ruling that adjoining property owners did not have standing where conservation restriction was not explicitly intended to benefit their property). In one unpublished Maine decision, the court found that the language of Maine's version of the UCEA precludes neighboring property owners from enforcing conservation easements. Jessica E. Jay, Third-Party Enforcement of Conservation Easements, 29 Vt. L. Rev. 757, 792 (2005) (describing facts of Cluff Miller v. Gallop, YORSC-RE-03-022 (Me. Sup. Ct., Yor. Cnty., July 8, 2003)).

Plaintiff argues that if he is not allowed to enforce the terms of the conservation easement, there would be no accountability for organizations that are unable or unwilling to fulfill their enforcement obligations. The Attorney General is, however, empowered to initiate or intervene in an action for precisely this reason. See Hicks v. Dowd, 157 P.3d 914, 920 (Wyo. 2007) ("The community's interest in the enforcement of a charitable trust must be vindicated by the attorney general." (citation omitted)). Maine's law explicitly empowers the

6

Attorney General, as a representative of the public, with the backup authority to enforce the terms of a conservation easement in the event that the holder fails to fulfill its duties. Jeff Pidot, Conservation Easement Reform: As Maine Goes Should the Nation Follow?, 74 Law & Contemp. Probs. 1, 14-15 (2011) (describing the "backup enforcement" powers of the Attorney General in Maine). Furthermore, the statute allows for third-party enforcement. If a grantor intends to confer enforcement rights on a third party, he or she may provide for such rights in the conservation easement terms. 33 M.R.S. § 478(1)(C).

Plaintiff's interpretation of the statute could also lead to illogical results. See Sunshine v. Brett, 2014 ME 146, ¶ 13, 106 A.3d 1123 (court must construe statutory language "to avoid absurd, illogical, or inconsistent results") (citation omitted). Some conservation easements span hundreds or even thousands of acres. Pidot, supra, at 6 ("Maine has the largest conservation easement ever, covering more than three-quarters of a million acres."). Under plaintiff's reading, an owner of a sliver of property subject to a conservation easement could enforce the easement's terms over thousands of acres. Such a scenario would allow for a multiplicity of suits and frustrate the easement holder's intended goals.

Finally, under plaintiff's reading of the statute, the word "the" is superfluous. See Dussault v. RRE Coach Lantern Holdings, LLC, 2014 ME 8, ¶ 45, 86 A.3d 52 ("[W]ords must be given meaning and not treated as meaningless and superfluous."); 33 M.R.S. § 478(1)(A). The Legislature could have written "owner of an interest in real property subject to the conservation easement" to achieve the interpretation that plaintiff argues for in this case. Instead, the Legislature adopted the language "owner of an interest in *the* real property," which suggests the Legislature intended to give only the owner of the specific

7

property at issue a cause of action under the statute. In this case, plaintiff has no interest in the town's property where the facility will be constructed.

b. "Special Interest" Standing

Plaintiff next argues that he has "special interest" standing to enforce the terms of the conservation easement. The concept of special interest standing comes from charitable trust law and allows individuals with an interest in the enforcement of the intent of a donor of trust property to enforce the trust's terms. See Grabowski v. City of Bristol, 780 A.2d 953, 955 (Conn. App. 2001). Other jurisdictions have grappled with whether to apply charitable trust principles to conservation easements. See, e.g., Long Green Valley Ass'n v. Bellevale Farms, Inc., 46 A.3d 473, 501-02 (Md. App. 2012) (declining to apply charitable trust principles where grantor sold conservation easement for considerable amount).

The UCEA leaves open the possibility that "a person authorized by other law" could bring a suit to enforce a conservation easement. See Unif. Conservation Easement Act § 3, 12 U.L.A. 184, Commissioners' cmt. ("In addition to these three categories of persons who derive their standing from the explicit terms of the easement itself, the Act also recognizes that the state's other applicable law may create standing in other persons."). As discussed, the Maine Legislature specifically omitted that provision. See 33 M.R.S. § 478, Me. cmt. This intentional omission by the Legislature forecloses any argument regarding "special interest" standing in conservation easement cases.

c. Breach of Contract Standing

Plaintiff also includes in the complaint a count for breach of contract. Plaintiff argues that he has standing to bring that claim as a party to the conservation easement. The easement specifically states that "[i]t is the

8

responsibility of Grantee to enforce the terms of this easement." (Conservation Easement, at 7.) There is no language in the easement giving the grantor's successors the right to enforce the terms of the easement against other property owners.

2. Ripeness

Defendants also challenge plaintiff's complaint on ripeness grounds. "Ripeness concerns the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." Waterville Indus. v. Fin. Auth. of Me., 2000 ME 138, ¶ 22, 758 A.2d 986. "A case is fit for judicial decision if it presents a concrete and specific legal issue that has a direct, immediate, and continuing impact on the parties." Keybank Nat'l Ass'n v. Sargent, 2000 ME 153, ¶ 24, 758 A.2d 528 (internal quotation marks omitted). "The hardship inquiry likewise requires adverse effects on the plaintiff, and speculative hardships do not suffice to meet this requirement." Johnson v. City of Augusta, 2006 ME 92, ¶ 8, 902 A.2d 855 (internal citation omitted).

Plaintiff alleges in the complaint that the Town's first proposal for the facility included a 60-car parking lot, an access road, and bathroom facilities. (Compl. ¶ 23.) Plaintiff further alleges that an ad-hoc town committee known as the "Ocean Access Committee" is finalizing the plans for the proposed facility. (Compl. ¶ 47.) Defendants argue that, because the Town has not received final approval to construct the proposed facility, plaintiff's action is premature.

In Johnson, the court explained that one of the goals of the ripeness doctrine is to prevent premature adjudication and "protect[] agencies from judicial interference until a decision with concrete effects has been made . . . ." Johnson, 2006 ME 92, ¶ 7, 902 A.2d 855. Based on the complaint, the proposal has

9

not yet been finalized and it is unclear whether, and in what form, CCLT will approve the project. There is also no hardship to the plaintiff at this time because the project has not yet adversely impacted plaintiff's property.

3. Arbitration Provision

Defendants also argue that any claims related to the trail easement must be arbitrated under the terms of the easement. (Conservation Easement, at 28.) Plaintiff seeks a declaration that "public use of the property is limited to the Trail Easement." (Compl. ¶ 67.) Plaintiff makes no claim regarding access to the trail or limitations or controls on access to the trail. (Conservation Easement, at 28.)

CONCLUSION

The plaintiff lacks standing to bring the claims and the claims are not fit for judicial decision.

The entry is

Defendants Chebeague & Cumberland Land Trust, Inc.'s Motion to Dismiss is GRANTED.

Defendant Inhabitants of the Town of Cumberland's Motion to Dismiss is GRANTED.

Plaintiff's Complaint is DISMISSED.

Date: May 5, 2015

Nancy Mills
Justice, Superior Court

10

SCOTT ANDERSON ESQ
VERRILL & DANA
PO BOX 586
PORTLAND ME 04112-0586

*P 14*

NATALIE BURNS ESQ
JENSEN BAIRD GARDNER & HENRY
PO BOX 4510
PORTLAND ME 04112

*Deft. Inhab of Town of Cumberland*

RUSSELL PIERCE ESQ
NORMAN HANSON & DETROY
PO BOX 4600
PORTLAND ME 04112-4600

*Deft Chebeague & Cumberland Land Trust*