******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

MARIA J. DERBLOM, EXECUTRIX (ESTATE
OF FRED H. RETTICH), ET AL. *v.*
ARCHDIOCESE OF HARTFORD
(AC 42630)

Lavine, Prescott and Alexander, Js.*

*Syllabus*

The plaintiffs, the executrix of the estate of R, several former students of a defunct Catholic school located in Madison that was the residual beneficiary of R's estate, the students' parents, and M Co., a corporation operating a private school that is purporting to be the successor to the defunct school, brought this action for relief against the defendant. After R died in 2013, the residuary of his estate was distributed to the defunct school in accordance with his will. In 2018, the defendant announced that, for financial reasons, it would be closing the defunct school and establishing a new school in Branford. Some of the parents of the students attending the defunct school then formed M Co., with the intent of establishing a new Catholic school in Madison. The plaintiffs alleged in their complaint that the residuary clause in R's will created a constructive trust for the benefit of the plaintiffs and that the defendant had a duty to convey the funds to M Co., as successor to the defunct school, or to return the funds to R's estate for distribution to his heirs. The defendant filed a motion to dismiss, asserting that none of the plaintiffs had standing to enforce the charitable gift. The trial court granted the motion and rendered judgment thereon, from which the plaintiffs appealed to this court. *Held* that the trial court properly granted the defendant's motion to dismiss because the plaintiffs lacked standing: the trial court did not err in construing R's bequest as an absolute or outright gift to the defunct school instead of as an endowment that created a charitable trust benefitting the plaintiffs; the residuary clause of the will did not limit the expenditure of principal, restrict the manner in which the funds could be used, name any beneficiaries or a trustee, or include any other language evidencing an intent to form a trust or to exercise any future control over the residue of the estate; moreover, the trial court did not err in concluding that the special interest exception to the rule that the attorney general has exclusive authority to bring an action to enforce charitable gifts was inapplicable to confer standing to the plaintiffs as the exception is limited to actions involving charitable trusts and R's bequest to the defunct school constituted an outright gift, extending the exception to include charitable gifts would undermine their nature as, unlike with charitable trusts, when a donor completes a gift he immediately and irrevocably transfers and relinquishes all control over the gifted property, and the plaintiffs failed to provide any legal authority to support their assertion that the exception should be extended to completed charitable gifts.

Argued October 20, 2020—officially released March 9, 2021

*Procedural History*

Action, inter alia, seeking the establishment of a constructive trust, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Pierson, J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed.*

*Drzislav Coric*, with whom was *Cody A. Layton*, for the appellants (plaintiffs).

*Kay A. Williams*, with whom was *Lorinda S. Coon*, for the appellee (defendant).

*Opinion*

PRESCOTT, J. The plaintiffs—Maria J. Derblom, in her capacity as the executrix of the estate of Fred H. Rettich;[1] eleven former students of Our Lady of Mercy School (OLM), a defunct Catholic school in Madison, and their parents;[2] and Our Lady of Mercy School of Madison, Inc., which operates a private school that purports to be the successor of OLM—appeal from the judgment of the trial court granting a motion to dismiss filed by the defendant, the Archdiocese of Hartford,[3] on the ground that the plaintiffs lack standing to bring an action concerning a bequest from Rettich to OLM. According to the plaintiffs, the court improperly (1) construed Rettich's bequest as an outright gift to OLM rather than as an endowment that resulted in a constructive charitable trust and (2) concluded that the plaintiffs lack standing because the state's attorney general has the exclusive authority to bring an action to enforce Rettich's gift and that the plaintiffs' reliance on a common-law special interest exception to that exclusive authority was misplaced because the exception is limited to actions involving charitable trusts and, thus, is not applicable in the present case.[4] We disagree with the plaintiffs and affirm the judgment of the court.

The following facts, as alleged in the complaint or as established by uncontested evidence submitted in conjunction with the motion to dismiss, and procedural history are relevant to our resolution of this appeal. In April, 2012, Rettich executed a will that contained a residuary clause in favor of OLM "or its successor, for its general uses and purposes."[5] Beginning in 2004, OLM had become an archdiocesan school under the auspices of the defendant.

It was important to Rettich that residents of Madison be able to send their children to a Catholic school in Madison. Prior to the execution of his will leaving the residue of his estate to OLM, Rettich had donated $500,000 to OLM. OLM later sent a letter to Rettich that marked the anniversary of that donation and informed him that $200,000 of the donated funds had been used by OLM to establish an endowment to "ensure [OLM's] future." The letter stated that the money was "invested and protected by the Archdiocese of Hartford for the exclusive use of OLM by US Trust." In his will, Rettich made no reference to his earlier donation or to any endowed funds or existing trust benefiting OLM.[6]

Rettich died on September 27, 2013. Derblom administered Rettich's estate and, in April, 2015, she filed a final accounting of the estate with the Probate Court. The Probate Court accepted the accounting and ordered distribution in accordance with it. The amount of Rettich's residual estate was $4,745,110.86. The estate remitted that amount by check to OLM.[7]

More than two years later, in January, 2018, the defen-

dant announced that it would be closing OLM and another parish school in Branford, St. Mary School.[8] It indicated that it intended to open a new school, East Shoreline Catholic Academy (ESCA), which would be located at the former St. Mary School site in Branford. According to a press release appended to the underlying complaint, "[t]he formation of ESCA is not considered a merger, because [OLM and St. Mary School] will cease to exist and a new corporation . . . will be formed. ESCA, however, will continue to be operated by the same three parishes [that operated OLM and St. Mary School]."

On February 28, 2018, shortly after the announcement of OLM's closing, some parents of students attending OLM, including some of the plaintiff parents, formed the plaintiff corporation, Our Lady of Mercy School of Madison, Inc., with the intent to form a new Catholic school in Madison that, as alleged in the complaint, would "[keep] the current mission and vision of OLM intact."[9] The plaintiffs further alleged that "[s]ince its founding, [the plaintiff corporation] has raised over $1 million in additional pledges to augment the endowment by [Rettich], filed for 501c (3) status,[10] developed a financial plan, identified a sponsor of independent Catholic schools and developed a curriculum. Additionally, [the plaintiff corporation] is in the process of hiring a principal and teachers for the school." (Footnote added.)

In April, 2018, the plaintiffs initiated the underlying action. The complaint contained seven counts and incorporated by reference and attached a number of exhibits.[11] Count one was brought on behalf of the plaintiff students and alleged that Rettich's bequest to OLM should be viewed as an endowment that resulted in a constructive trust benefitting the plaintiff students with the defendant acting as trustee. It asserted that the defendant has an equitable duty to convey the corpus of that alleged trust to the plaintiff corporation or, alternatively, back to Rettich's estate for distribution because the defendant "would be unjustly enriched if it were permitted to retain the endowment and disseminate it at its own discretion and for purposes wholly unrelated to the operation and preservation of OLM or a rightful successor." Count two, also brought on behalf of the plaintiff students, sounded in breach of fiduciary duty premised on the defendant's having closed OLM and its alleged misappropriation of the "endowment" from Rettich. Counts three and four were brought by the plaintiff parents and effectively tracked the first two counts, sounding in constructive trust and breach of fiduciary duty. Counts five and six were brought by the plaintiff corporation and Derblom, respectively, and, as in the prior counts, alleged the existence of a constructive trust and an equitable duty on the part of the defendant to convey any and all funds to the plaintiff corporation for the intended beneficiaries or, alterna-

tively, to the estate. Finally, in count seven, Derblom asserted on behalf of the estate "a legal and/or equitable interest in the endowment made to OLM, by reason of danger of loss or uncertainty" and sought a declaratory judgment "determining [1] whether the endowment shall be conveyed to [the plaintiff corporation] or some other appropriate entity for the benefit of the [p]lain-tiffs; [and] [2] whether the endowment to OLM has lapsed with no clear successor and all funds shall be returned to [Rettich's estate] for dissemination to his rightful heirs at law."

The defendant filed a motion to dismiss the action in its entirety in July, 2018, arguing that none of the plaintiffs had standing "to bring an action to enforce the terms of a completed charitable gift to a school" and, as a result, the court was "without subject matter jurisdiction over the claims against the defendant . . . ." The defendant filed a memorandum in support of the motion to dismiss, in which it argued that, under Connecticut law, only the attorney general has standing to bring an action to enforce a charitable gift made for a stated purpose. Attached to the memorandum were several affidavits, copies of Probate Court documents related to the administration of Rettich's estate, and a copy of the check issued by the estate to OLM.

In September, 2018, the plaintiffs filed an objection to the motion to dismiss and accompanying memoran-dum in support of the objection. The plaintiffs argued that the "attorney general's lack of involvement in the present matter is immaterial" because "[s]tanding is conferred on the [plaintiff students, the plaintiff par-ents, and the plaintiff corporation] via the special inter-est exception," citing *Grabowski* v. *Bristol*, Superior Court, judicial district of New Britain, Docket No. CV-95-0468889-S (June 3, 1997) (19 Conn. L. Rptr. 623), aff'd, 64 Conn. App. 448, 780 A.2d 953 (2001).[12] With respect to Derblom, the plaintiffs argued that she had standing apart from the other plaintiffs because, in the event the court were to determine that a constructive trust in favor of the other plaintiffs failed, she would have a real legal interest as executor of the estate to ensure that any trust funds were returned to the estate for redistribution to Rettich's heirs.

The defendant filed a reply to the plaintiffs' objection. It argued, inter alia, that the common-law special inter-est exception relied on by the plaintiffs was inapplicable because it has been recognized in Connecticut only in the context of charitable trusts, not testamentary gifts. It also argued that, even if applicable, courts have con-strued the exception narrowly and the plaintiffs simply failed to establish a special interest sufficient to confer standing. The plaintiffs filed a supplemental memoran-dum of law rebutting the arguments of the defendant.

The motion to dismiss was argued to the court on October 22, 2018. On February 6, 2019, the court issued

a memorandum of decision granting the defendant's motion to dismiss. The court concluded that the provision of Rettich's will leaving the residue of his estate to OLM constituted a testamentary gift and did not create a charitable trust. It further concluded that the exclusive power to enforce that type of gift lies with the attorney general pursuant to our common law and as codified in General Statutes § 3-125. It also concluded that any special interest exception to the exclusive power of the attorney general has been recognized and applied only in the context of charitable trusts, not gifts, and that enlarging the exception under the circumstances presented would undermine the nature of a gift, in which a donor immediately and irrevocably transfers and relinquishes any control over the gifted property. Finally, and in the alternative, the court concluded that, even if the exception applied in the present case, "the plaintiffs have failed to demonstrate—as is their burden in opposing a motion to dismiss—that they have a special interest in the decedent's residual gift sufficient to confer standing upon them to pursue their claims." This appeal followed.

Before turning to our analysis of the plaintiffs' claims, we first set forth our well settled standard of review applicable to the granting of a motion to dismiss. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [decision to] grant . . . the motion to dismiss will be de novo." (Internal quotation marks omitted.) *Styslinger* v. *Brewster Park, LLC*, 321 Conn. 312, 316, 138 A.3d 257 (2016).

"The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . [I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute. . . .

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) Id. If "a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 318, 71 A.3d 492 (2013).

Our Supreme Court has explained that "[d]ifferent rules and procedures will apply, depending on the state

of the record at the time the motion [to dismiss] is filed." *Conboy* v. *State*, 292 Conn. 642, 651, 974 A.2d 669 (2009). More specifically, a court may be called on to determine whether subject matter jurisdiction is lacking on the basis of "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." (Internal quotation marks omitted.) Id. "[I]f the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings. . . . If, however, the defendant submits either no proof to rebut the plaintiff's jurisdictional allegations . . . or only evidence that fails to call those allegations into question . . . the plaintiff need not supply counteraffidavits or other evidence to support the complaint, but may rest on the jurisdictional allegations therein." (Emphasis omitted; internal quotation marks omitted.) *Hilario's Truck Center, LLC* v. *Rinaldi*, 183 Conn. App. 597, 602, 193 A.3d 683, cert. denied, 330 Conn. 925, 194 A.3d 776 (2018). This case falls under the second category, in which the facts as alleged in the complaint are supplemented by undisputed facts evidenced in affidavits and other documents submitted in support of the motion to dismiss.

I

The plaintiffs first claim that the court improperly construed Rettich's bequest as an absolute or outright gift to OLM rather than as an endowment that created or resulted in some type of charitable trust benefiting the plaintiffs. We disagree.

"The construction of a will presents a question of law to be determined in light of facts which are found by the trial court or are undisputed or indisputable. . . . [If] the issue before us concerns the court's legal conclusion regarding the intent of [a testator] as expressed solely in the language of [a] will, we must decide that issue by determining, de novo, whether that language supports the court's conclusion. . . . Our primary objective in construing [a] will is to ascertain and effectuate [the testator's] intent. . . . In searching for that intent, we look first to the precise wording employed by the testat[or] in [the] will . . . [because]

the meaning of the words as used by the testat[or] is the equivalent of [his] legal intention—the intention that the law recognizes as dispositive. . . . The question is not what [he] meant to say, but what is meant by what [he] did say." (Citations omitted; internal quotation marks omitted.) *Canaan National Bank* v. *Peters*, 217 Conn. 330, 335–36, 586 A.2d 562 (1991); see also *Schwerin* v. *Ratcliffe*, 335 Conn. 300, 310, 238 A.3d 1 (2020) ("The most inflexible rule of testamentary construction and one universally recognized is that the intention of the testator should govern the construction, and this intention is to be sought in the language used by the testator in the light of the circumstances surrounding and known to him at the time the will was executed. . . . In seeking the testator's testamentary intent, the court looks first to the will itself . . . . It studies the will as an entirety. The quest is to determine the meaning of what the [testator] said and not to speculate upon what [he] meant to say . . . ." (Internal quotation marks omitted.)).

Before turning to the will language at issue, it is helpful first to consider what distinguishes the giving of an outright gift to a charity from a gift given in trust. A charitable trust "is a fiduciary relationship with respect to property *arising as a result of a manifestation of an intention to create it*, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable purpose." (Emphasis added.) 2 Restatement (Second), Trusts § 348, p. 210 (1959). A trust "requires three basic elements: (1) a trust res; (2) a fiduciary relationship between a trustee and a beneficiary requiring the trustee to deal with the trust res for the benefit of the beneficiary; and (3) the manifestation of an intent to create a trust." *Goytizolo* v. *Moore*, 27 Conn. App. 22, 25, 604 A.2d 362 (1992).

By contrast, a gift, whether testamentary or inter vivos, "is the transfer of property without consideration . . . [in which] the donor [parts] with control of the property [that] is the subject of the gift with an intent that title shall pass *immediately and irrevocably* to the donee." (Emphasis added; internal quotation marks omitted.) *Parley* v. *Parley*, 72 Conn. App. 742, 749, 807 A.2d 982 (2002). Thus, whenever someone donates to charity without reserving any right of control or placing limitations on the donation's use, this constitutes a gift, and the law will not recognize any resulting trust. See *Carl J. Herzog Foundation, Inc.* v. *University of Bridgeport*, 243 Conn. 1, 7–8, 699 A.2d 995 (1997); *Russell* v. *Yale University*, 54 Conn. App. 573, 578, 737 A.2d 941 (1999).

The law recognizes a distinction between a donor who expresses an intent to make a donee a trustee and one who intends to make an absolute gift. "In the case of a trust, the legal title only is in the corporation,

subject to the duties imposed by the terms of the trust instrument and by the law of charitable trusts, which may be enforced by the [a]ttorney [g]eneral representing the public. In the case of the absolute gift *full ownership of the property given vests in the corporation*, subject to the duties imposed upon it by its charter or articles of incorporation [and other legal restrictions]. The [a]ttorney [g]eneral or another public official has the power, as a representative of the state and on behalf of the public, to compel the corporation to perform these duties. The authority applies to protect charitable assets, whether held in trust or corporate form." (Emphasis altered; footnotes omitted.) G. Bogert et al., Bogert's The Law of Trusts and Trustees (2020) § 324.

Turning to the present case, the residuary clause of Rettich's will states in relevant part: "All the rest, residue, and remainder of my property of every kind and description . . . remaining after the payment of estate, inheritance, succession, transfer and death taxes or duties . . . I give and bequeath, in memory of Fred H. & Rosa Rettich, to [OLM], 149 Neck Road, Madison, Connecticut, or its successor, for its general uses and purposes." The language used is not ambiguous and must be given its ordinary meaning. It clearly and expressly provides that the residue of the estate is "give[n]" to OLM, without placing any restriction on OLM's use. This language reasonably can be construed only as manifesting an intent to convey full control over the residue of his estate to OLM as an outright gift. Rettich did not use any qualifying language that would suggest that he intended to give the residue only "in trust" or use any other language indicative of an intent to create a trust of any kind. Rettich placed no limit on the expenditure of the principal. No beneficiary or trustee is named in the will. Although it is true that courts may recognize the formation of a testamentary charitable trust even in the absence of precise language; see, e.g., *O'Leary* v. *McGuinness*, 140 Conn. 80, 84, 98 A.2d 660 (1953) (will bequeathing legal title to property to testator's executors but giving beneficial interest to charities to be selected by those executors created trust despite word "trust" not appearing in will); courts will not read terms into a will that are not otherwise implied and will not recognize the formation of a trust in the absence of some manifestation of intent to do so, which simply does not exist in Rettich's will. See *Winchester* v. *Cox*, 129 Conn. 106, 111, 26 A.2d 592 (1942) ("[if] property is conveyed to a charitable corporation, simply with the requirement that it be used for one of its authorized purposes, this is not in itself sufficient to establish a trust"); *Lyme High School Assn.* v. *Alling*, 113 Conn. 200, 204, 154 A. 439 (1931) (holding that bequest to school containing no provision requiring that funds be held in trust or restricting manner in which funds may be managed or used is not trust).

The plaintiffs would have us interpret Rettich's use

of the language "or its successor" in his bequest to OLM as manifesting something more than an intent to make an outright gift to OLM. The plaintiffs imply that those words convey that it was Rettich's intent that, in the event OLM closed or otherwise ceased to exist under its current name *after* the residue of the estate passed, any unspent funds must pass to whichever school is deemed OLM's successor. We are not persuaded, however, by this argument. Rather, we construe the language "or its successor" as only commonplace testamentary verbiage intended to avoid a potential failure of the residuary bequest in the event that OLM had ceased to exist or changed its name *before* Rettich died and before he had an opportunity to amend his will. The language by itself, with no other indicia of any intent to exercise future control over the residue of the estate or to convey it in trust, does not undermine the trial court's construction of the residual clause as effectuating an absolute gift to OLM.[13] We agree with the trial court's construction of the will and reject the plaintiffs' claim that the court improperly failed to construe Rettich's residuary clause as anything more than a gift.

## II

Next, the plaintiffs claim that the court improperly concluded that a common-law special interest exception to the rule that the state's attorney general has exclusive authority to bring an action to enforce Rettich's charitable gift is limited in Connecticut to actions involving charitable trusts and, thus, was inapplicable to confer standing on the plaintiffs in the present case involving a gift. We are not persuaded.

"At common law, a donor who has made a completed charitable contribution, *whether as an absolute gift or in trust*, had no standing to bring an action to enforce the terms of his or her gift or trust unless he or she had expressly reserved the right to do so. Where property is given to a charitable corporation and it is directed by the terms of the gift to devote the property to a particular one of its purposes, it is under a duty, *enforceable at the suit of the [a]ttorney [g]eneral*, to devote the property to that purpose." (Emphasis altered; footnote omitted; internal quotation marks omitted.) *Carl J. Herzog Foundation, Inc.* v. *University of Bridgeport*, supra, 243 Conn. 5–6, quoting 2 Restatement (Second), Trusts § 348, comment (f), p. 212 (1959). "Connecticut is among the majority of jurisdictions that have codified this common-law rule and has entrusted the attorney general with the responsibility and duty to represent the public interest in the protection of any gifts, legacies or devises intended for public or charitable purposes. . . . General Statutes § 3-125." (Internal quotation marks omitted.) *Carl J. Herzog Foundation, Inc.* v. *University of Bridgeport*, supra, 7 n.3.[14] Section 3-125 contains no language evidencing any intent on the part

of the legislature to qualify this responsibility or to suggest that it is a responsibility to be shared with other interested parties.[15]

"The theory underlying the power of the [a]ttorney [g]eneral to enforce gifts for a stated purpose is that a donor who attaches conditions to his gift has a right to have his intention enforced. . . . The donor's right, however, is enforceable *only* at the instance of the attorney general . . . ." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 7. Thus, as this court stated in *Russell* v. *Yale University*, supra, 54 Conn. App. 573, if a "donor has effectually passed out of himself all interest in the fund devoted to a charity, neither he *nor those claiming under him* have any standing in a court of equity as to its disposition and control." (Emphasis added; internal quotation marks omitted.) Id., 578; see also *Carl J. Herzog Foundation, Inc.* v. *University of Bridgeport*, supra, 243 Conn. 9 ("a donor [has] no standing to enforce the terms of a completed charitable gift unless the donor had *expressly* reserved a property interest in the gift" (emphasis added)). As we have determined in part I of this opinion, the bequest from Rettich to OLM became a completed charitable gift when the estate gave OLM a check for the full amount of the residue of the estate in accordance with the final accounting and closing of the estate. Here, the stated purpose of the gift was for OLM's "general uses and purposes" and, as we indicated in footnote 13 of this opinion, the record is silent as to how OLM made use of the funds prior to its closing or whether any funds remain.

Although the plaintiffs recognize that, as a matter of statutory and common law, standing to enforce the terms of a completed charitable gift lies exclusively with the attorney general, they nevertheless argue that courts in this state have recognized a so-called "special interest" exception to this general rule and claim that the trial court improperly declined to apply that exception with respect to Rettich's gift to OLM. We agree with the trial court and the defendant that the exception is inapplicable to the present case.

The special interest exception has been recognized by Connecticut courts as an exception to the rule that the attorney general has the sole and exclusive authority to bring an action to protect any "gifts, legacies or devises" intended for a charitable purpose.[16] As noted by the defendant and the court, however, the special interest exception has been applied narrowly only in cases involving charitable trusts, not charitable gifts. See *Carl J. Herzog Foundation, Inc.* v. *University of Bridgeport*, supra, 243 Conn. 8 n.4 ("it is well established *in the context of charitable trusts* that there are others, in addition to the attorney general, who may enforce *the terms of a trust*" (emphasis added)). In fact, in urging us that the exception applies to the facts

of this case, the plaintiffs have cited no case law or treatise discussing standing to enforce the terms of a completed testamentary gift without restrictions, such as the one at issue in the present case. The principal case relied on by the plaintiffs is the trial court's decision in *Grabowski* v. *Bristol*, 64 Conn. App. 448, 449, 780 A.2d 953 (2001), which itself involved "a *testamentary charitable trust* that conveyed a designated parcel of property to the city of Bristol."[17] (Emphasis added.) As the trial court noted in its decision in the present case, the appellate case law discussed by the trial court in *Grabowski* also involved issues related to charitable trusts, not gifts. See, e.g., *Steenek* v. *University of Bridgeport*, 235 Conn. 572, 586–88, 668 A.2d 688 (1995) (declining to extend principles of trust law applicable to charitable trusts to charitable corporations and narrowly construing special interest exception); *Belcher* v. *Conway*, 179 Conn. 198, 204, 206–209, 425 A.2d. 1254 (1979) (discussing rights of minority trustees, admitted as party plaintiffs, to counsel of their choice in action concerning application of doctrine of cy pres or approximation with respect to testamentary charitable trust). In the absence of any controlling authority in this state recognizing the application of the special interest exception to completed gifts, the trial court declined "to enlarge the scope of the exception as it has been discussed by our courts." The trial court indicated that expansion of the exception in order to confer standing beyond the attorney general would be unwise. We agree with the trial court's reasoning.

First, as we already have discussed, there is a significant legal distinction, relevant to our consideration of the issue of standing, between a charitable trust and a gift. When a donor completes a gift, he gives up all control over the donated property, which is irrevocably transferred to the donee. *Parley* v. *Parley*, supra, 72 Conn. App. 749. He no longer has any legal interest in the completed gift. Thus, as stated by the trial court, "[c]onferring standing on the plaintiffs to pursue claims for constructive trust, breach of fiduciary duty, and a declaratory judgment would be wholly inconsistent with the characteristics of a gift."

Second, the plaintiffs have provided us with no legal authority supporting their assertion that the special interest exception should be expanded to include actions by third parties regarding completed charitable gifts like the bequest from Rettich to OLM. They devote only a single paragraph to this issue in their appellate brief. Our own research shows that courts in other jurisdictions have reached different conclusions regarding the scope of the special interest exception in cases in which a donor had retained some express legal right over a charitable gift or had expressed a clear intent to restrict the use of the gift to a specific purpose. Compare, e.g., *Hardt* v. *Vitae Foundation, Inc.*, 302 S.W.3d 133, 139–40 (Mo. App. 2009) (declining to

expand common-law special interest exception in action by donor to enforce restrictions on charitable gift in absence of showing that attorney general lacked ability to represent donor's interest), with *Smithers* v. *St. Luke's–Roosevelt Hospital Center*, 281 App. Div. 2d 127, 140–41, 723 N.Y.S.2d 426 (2001) (holding wife of deceased donor of charitable gift to hospital, which gift was subject to numerous restrictions agreed to by hospital, had concurrent standing with attorney general to enforce restrictions). The plaintiffs, however, have not cited or relied on these or any other out-of-state authority to support their argument, and we are disinclined to enter into any discussion of the relative merits or persuasiveness of those authorities at this time because, in our view, they are distinguishable from the matter before us, which does not involve a gift encumbered by any cognizable intent on behalf of the donor to retain any legal interest in the donation or to place any specific restrictions on the use of the gift. The gift to OLM was outright for its "general uses and purposes."

The plaintiffs have provided no compelling argument as to why, under the present circumstances, we should abandon the well established and legislatively adopted general rule that the attorney general has the exclusive power to enforce Rettich's testamentary gift to the extent it is necessary to vindicate the interests of the plaintiffs and of the general public. Because the plaintiffs lacked standing, we conclude that the court properly granted the defendant's motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court at the date of oral argument.

[1] Derblom is the sister-in-law of Fred H. Rettich, the decedent.

[2] The minor student plaintiffs are Luke Ciocca, John Ciocca, Julia Coric, Amanda Coric, Vladimir Coric III, Mia Lombardi, Thomas Piagentini, Jack Piagentini, Kathryn Piagentini, Julianna Picard, and Alessandra Picard. The parent plaintiffs are Stephen Ciocca, Jacqueline Ciocca, Vladimir Coric, Ann Coric, Tom Lombardi, Roberta Lombardi, Joe Piagentini, Kelly Piagentini, John Picard, and Tara Picard.

[3] The complaint names the defendant as the "Archdiocese of Hartford a/k/a Hartford Roman Catholic Diocesan Corporation."

[4] The plaintiffs also claim that the court improperly determined that (1) even if the special interest exception applied in the present case, the school currently operated by the plaintiff corporation is not the successor school to OLM and (2) the plaintiffs failed to demonstrate any other basis on which to assert a special interest necessary to confer standing to bring this action. Because we agree with the trial court that the special interest exception recognized under Connecticut common law does not apply under the circumstances of the present case, we do not reach these additional claims of error.

The plaintiffs also argue that Derblom, in her capacity as representative of the estate, had standing apart from the remaining plaintiffs because, in the event the plaintiffs demonstrated that Rettich's bequest resulted in a constructive trust and that trust subsequently were deemed to have failed, the bequest would need to be returned to the estate for distribution to the decedent's heirs. Because we agree with the court and the defendant that Rettich's bequest properly is construed as a completed absolute gift and never resulted in any actual or constructive trust, we do not reach the merits of this additional argument.

[5] A residuary clause disposes of any remaining estate property after all other specific bequests, devises and obligations of the estate are satisfied.

See *Warner* v. *Merchants Bank & Trust Co.*, 2 Conn. App. 729, 732, 483 A.2d 1107 (1984). The clause in Rettich's will provided: "All the rest, residue, and remainder of my property of every kind and description, real, personal and mixed, whatever situated (all of which is hereinafter referred to as '[r]esidue'), remaining after the payment of estate, inheritance, succession, transfer and death taxes or duties, in accordance with Article VII hereof (but excluding any property over which I may have a power of appointment at my death), I give and bequeath, in memory of Fred H. & Rosa Rettich, to [OLM], 149 Neck Road, Madison, Connecticut, or its successor, for its general uses and purposes."

[6] Throughout their briefs and at oral argument before this court, the plaintiffs refer to Rettich's bequest to OLM as an "endowment." An endowment is defined as "[a] gift of money or property to an institution (such as a university) *for a specific purpose*, esp. one whose principal is kept intact indefinitely and only the interest income from that principal is used." (Emphasis added.) Black's Law Dictionary (11th Ed. 2019) p. 668. As we discuss in part I of this opinion, Rettich's residuary bequest to OLM "for its general uses and purposes" contains no other language suggesting that Rettich intended to limit OLM's use of the funds to any specific purpose or that he intended to restrict OLM's use to only interest income or some other limited portion of the total bequest. The plaintiffs' use of the term "endowment" in referring to Rettich's bequest is thus unsupported by any evidence in the record. To the extent that we use that term in setting forth the plaintiffs' arguments, our use should not be misconstrued as adopting the plaintiffs' characterization.

[7] Payment was by check dated July 8, 2015, and made payable to OLM. According to the complaint, those funds have "come under the possession and/or control of the [d]efendant . . . ." In an affidavit submitted by the defendant with its motion to dismiss, the Reverend Daniel McLearen, a diocesan priest serving at one of the two local parishes in Madison and Guilford that "jointly-sponsored" OLM, averred that the funds from Rettich's estate "were deposited in an account established by [the two parishes] in the name of [OLM]" and that McLearen is "the sole signatory on that account." It is unnecessary for purposes of this appeal for us to resolve any ambiguity in the record concerning what portion, if any, of Rettich's bequest remains under deposit or whether McLearen's affidavit created any dispute over who had legal control of the funds deposited by McLearen because those facts have no bearing on our resolution of the standing issue before us.

[8] As explained by the trial court, "[d]espite drawing students from surrounding towns, enrollment at OLM declined precipitously from 2013 to 2018, from 228 to 140, a decrease of 39 [percent]. . . . OLM was also facing other challenges. OLM was located on property that was leased to OLM and in 2016, OLM was informed that the lease would not be extended beyond the 2017–2018 academic year. . . . Although OLM attempted to purchase the property or obtain a long-term lease, these efforts were unsuccessful," ultimately leading to the decision of the governing parishes to close and consolidate schools. (Citations omitted.)

[9] The record indicates that the plaintiff corporation has founded a new private school in Madison named Our Lady of Mercy Preparatory Academy. The plaintiff corporation asserts that that this new school is an "independent Catholic" school. The defendant disputes this characterization. In a letter from the Archbishop of Hartford to the First Selectman of Madison, the archbishop, citing canon law, explained that "no school may bear the title *Catholic school* without the consent of the competent ecclesiastical authority," that he, as that authority, had not consented to a new Catholic school in the area in question, and that, "[t]herefore, any new OLM school is not, and should not present itself, as a Catholic school." (Internal quotation marks omitted.) A copy of the letter was appended as an exhibit to the defendant's reply to the plaintiffs' opposition to the motion to dismiss. This issue is not before us on appeal.

[10] Section 501 (c) (3) of title 26 of the United States Code is the provision of the Internal Revenue Code that allows for federal tax exemption for certain nonprofit organizations. Donors who make charitable contributions to § 501 (c) (3) organizations may also be entitled to a deduction for federal income tax purposes. See 26 U.S.C. § 170 (2018).

[11] Specifically, the following exhibits were attached to the complaint: (1) a copy of Rettich's will; (2) an affidavit from Derblom; (3) two letters from OLM to Rettich discussing the donation he made to OLM prior to his death; (4) a press release by the defendant about ESCA; (5) a document entitled "FAQs About [ESCA]"; and (6) a certificate of incorporation and bylaws for

the plaintiff corporation.

[12] Attached as exhibits to the plaintiffs' memorandum in opposition were, inter alia, an affidavit from one of the plaintiffs' attorneys indicating that he had contacted the Office of the Attorney General by letter and formally requested that the attorney general join in bringing the present action. According to counsel, no action was taken on that request and the plaintiffs elected to file the action without the participation of the attorney general.

[13] Although strongly contested by the parties throughout these proceedings; see footnote 9 of this opinion; it is unnecessary for the purposes of our analysis to resolve, either as a matter of law or by divining Rettich's intent, whether ESCA or Our Lady of Mercy Preparatory Academy should be deemed a successor school to OLM. Such a designation is rendered irrelevant on the basis of our determination that Rettich's bequest of the residue of his estate to OLM was an absolute gift, completed upon the delivery of the check from his estate to OLM. Upon completion of the gift, title to those funds became absolute in OLM, and neither Rettich nor his estate retained any legal interest in what happened to those funds in the event of OLM's demise. Even if this were not true, the record contains no evidence or accounting of how OLM made use of the funds prior to closing or whether any funds remain and, if so, how much.

[14] General Statutes § 3-125, which sets forth the duties of our attorney general, provides in relevant part that the attorney general "shall represent the public interest in the protection of any gifts, legacies or devises intended for public or charitable purposes. . . ."

[15] "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *O'Bryan*, 318 Conn. 621, 636, 123 A.3d 398 (2015).

[16] Although not defined in § 3-125, "charitable purpose" is defined elsewhere in our statutes as "the relief of poverty, the *advancement of education* or religion, the promotion of health, the promotion of governmental purposes and any other purpose the achievement of which is beneficial to the community"; (emphasis added) General Statutes § 45a-535a (1); and as "any benevolent, *educational*, philanthropic, humane, scientific, patriotic, social welfare or advocacy, public health, environmental conservation, civic or eleemosynary objective." (Emphasis added.) General Statutes § 21a-190a (4). Under either definition, Rettich's gift to OLM was for a charitable purpose.

[17] Although standing was not raised as an issue on appeal in *Grabowski*, this court briefly addressed the issue sua sponte indicating that the trial court had correctly determined that "the plaintiffs' complaint demonstrated that the plaintiffs had a special interest in Peck Park because, unlike members of the general public, their property adjoined Peck Park." *Grabowski* v. *Bristol*, supra, 64 Conn. App. 451. This court's opinion contained no discussion of the scope of the special interest exception outside of enforcement of a charitable trust.