******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

# MARIA J. DERBLOM, EXECUTRIX (ESTATE OF FRED H. RETTICH), ET AL. *v.* ARCHDIOCESE OF HARTFORD
## (SC 20584)

Robinson, C. J., and McDonald, D'Auria, Mullins and Ecker, Js.

*Syllabus*

The plaintiffs, who were the putative beneficiaries of a testamentary bequest that R had made to a defunct archdiocesan school (OLM) under the auspices of the defendant archdiocese, sought, inter alia, to establish and enforce the terms of a constructive trust. The plaintiffs are the executrix of R's estate, eleven former students of OLM and their parents, and M Co., which operates a private Catholic school that purports to be OLM's successor. Before his death, R donated a large sum of money to OLM, as it was important to him that parents be able to send their children to a Catholic school in the town of Madison, where OLM was located. After R died, his residual estate was distributed to OLM pursuant to his will, which contained a residuary clause in favor of OLM "or its successor, for its general uses and purposes." The defendant thereafter announced that it would close OLM and another archdiocesan school and open a new school in the town of Branford. Some parents of students attending OLM, including some of the plaintiff parents, subsequently formed M Co., intending to establish a new Catholic school in Madison that would retain OLM's mission. In their complaint, the plaintiffs alleged, inter alia, that R's bequest to OLM should be viewed as an endowment that resulted in a constructive trust benefiting the plaintiff students, with the defendant acting as trustee, and that the defendant had an equitable duty to convey the unspent portion of the bequest to M Co., as OLM's "successor," or back to R's estate. The executrix of R's estate also sought a judgment declaring whether the endowment should be conveyed to M Co., or some other appropriate entity, for the benefit of the plaintiffs or if the endowment to OLM had lapsed with no clear successor, such that the funds should be returned to R's estate. The defendant moved to dismiss the action, contending that none of the plaintiffs had standing to enforce the terms of a completed charitable gift to a school. The defendant relied on the common-law rule, codified by statute (§ 3-125), that the state attorney general has the exclusive authority to bring an action to enforce the terms of a charitable gift. The plaintiffs objected on the ground that they had standing under the exception to that rule for persons who have a special interest in the enforcement of a charitable trust. The trial court, however, granted the defendant's motion to dismiss, and the Appellate Court affirmed, agreeing with the trial court that the plaintiffs lacked standing. The Appellate Court concluded that R's bequest to OLM was an outright or absolute gift to OLM, rather than an endowment that resulted in a charitable trust, and that the special interest exception did not apply when, as in the present case, the charitable gift is unencumbered by specific restrictions on its use. On the granting of certification, the plaintiffs appealed to this court. *Held* that the Appellate Court properly upheld the trial court's dismissal of the plaintiffs' action for lack of standing:

1. The Appellate Court correctly determined that R's bequest to OLM was an outright, unrestricted gift:

When a donor specifies that a gift must be used for the donee's "general uses and purposes," the only limitation on the donee's use of the gift is that the donee must use it in furtherance of the duties imposed by the donee's charter or articles of incorporation, and, because this limitation applies to all charitable gifts, regardless of whether it is expressly included in the instrument conferring the gift, the "general uses and purposes" language in R's bequest to OLM evinced an intent that it was unrestricted rather than restricted.

Moreover, the plaintiffs could not prevail on their claim that R's gift to

OLM was restricted on the ground that R specified in his will that, if OLM became incapable of possessing or using the gift, the unspent portion should go to OLM's "successor," as that claim was based on allegations that R's will evinced an intent that M Co., as the entity with the mission that most closely approximates the mission of OLM, should be the cy pres beneficiary of the gift to OLM, rather than on any allegation that M Co. was OLM's successor corporation in the legal sense, and the plaintiffs' claim was inadequately briefed insofar as the plaintiffs did not refer to the cy pres doctrine in their briefs or cite to any authority for the proposition that proof of such intent means that there is an implied restriction on the trust or gift such that a potential cy pres beneficiary has standing to initiate proceedings to enforce the donor's intent.

2. The Appellate Court correctly determined that, under the specific facts and circumstances of the present case, the plaintiffs did not have standing to bring an action to enforce R's unrestricted bequest to OLM under the special interest exception to the rule that the state attorney general has exclusive authority to enforce the terms of a charitable gift:

When a donor has made a gift to a charitable organization that is unrestricted by any contractual terms or qualifications, the donee organization is the sole beneficiary of the gift, and the only limitation on its use is that the organization must use it in furtherance of the duties imposed on it by its charter or articles of incorporation, and this court was not aware of any case in which a court had held that the potential beneficiaries of a charitable organization have standing to bring an action to compel the organization to use an unrestricted gift in a specific manner.

Moreover, even if there were rare instances in which the beneficiary of a charitable organization could be found to have a special interest sufficient to confer standing to bring an action to force the organization to use an unrestricted gift in a specific manner, this was not such an instance, as students enrolled in educational institutions constitute a constantly fluctuating group, and concluding that a particular student or group of students has standing to bring an action to enforce the terms of a trust created to benefit the institution would undermine the primary purpose behind the rule that the state attorney general has exclusive standing to bring such an action, which is to limit the number of persons who have standing to initiate litigation.

Argued November 21, 2022—officially released March 14, 2023

*Procedural History*

Action to establish a constructive trust, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Pierson, J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the plaintiffs appealed to the Appellate Court, *Lavine, Prescott* and *Alexander, Js.*, which affirmed the judgment of the trial court, and the plaintiffs, on the granting of certification, appealed to this court. *Affirmed.*

*Drzislav Coric*, with whom were *Brandon Marley* and, on the brief, *Cody A. Layton*, for the appellants (plaintiffs).

*Lorinda S. Coon*, with whom were *John W. Sitarz* and, on the brief, *Kay A. Williams*, for the appellee (defendant).

*Opinion*

ROBINSON, C. J. The sole issue in this certified appeal is whether the plaintiffs,[1] who are the putative beneficiaries of a testamentary bequest, have standing under the special interest exception to the common-law rule, codified at General Statutes § 3-125, that the attorney general has exclusive authority to enforce the terms of a charitable gift, to enforce the terms of a bequest from Fred H. Rettich to Our Lady of Mercy School (OLM) in Madison. The plaintiffs appeal, upon our granting of their petition for certification,[2] from the judgment of the Appellate Court, which affirmed the trial court's granting of the motion to dismiss filed by the defendant, the Archdiocese of Hartford. *Derblom* v. *Archdiocese of Hartford,* 203 Conn. App. 197, 217, 247 A.3d 600 (2021). On appeal, the plaintiffs claim that the Appellate Court incorrectly determined that they lacked standing to bring this action. We conclude that the plaintiffs do not come within the "special interest" exception to the attorney general's exclusive standing to bring an action to enforce the terms of a charitable gift. Accordingly, we affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following facts, as alleged in the complaint or as established by uncontested evidence submitted in conjunction with the motion to dismiss. "In April, 2012, Rettich executed a will that contained a residuary clause in favor of OLM 'or its successor, for its general uses and purposes.'[3] Beginning in 2004, OLM had become an archdiocesan school under the auspices of the defendant.

"It was important to Rettich that residents of Madison be able to send their children to a Catholic school in Madison. Prior to the execution of his will leaving the residue of his estate to OLM, Rettich had donated $500,000 to OLM. OLM later sent a letter to Rettich that marked the anniversary of that donation and informed him that $200,000 of the donated funds had been used by OLM to establish an endowment to 'ensure [OLM's] future.' The letter stated that the money was 'invested and protected by the [defendant] for the exclusive use of OLM by US Trust.' In his will, Rettich made no reference to his earlier donation or to any endowed funds or existing trust benefiting OLM." (Footnote in original; footnote omitted.) *Derblom* v. *Archdiocese of Hartford,* supra, 203 Conn. App. 200–201.

"Rettich died on September 27, 2013. [The named plaintiff, Maria J. Derblom, the executrix of Rettich's estate] administered Rettich's estate, and, in April, 2015, she filed a final accounting of the estate with the Probate Court. The Probate Court accepted the accounting and ordered distribution in accordance with it. The amount of Rettich's residual estate was $4,745,110.86.

The estate remitted that amount by check to OLM.[4]

"More than two years later, in January, 2018, the defendant announced that it would be closing OLM and another parish school in Branford, Saint Mary School. It indicated that it intended to open a new school, East Shoreline Catholic Academy (ESCA), which would be located at the former Saint Mary School site in Branford. According to a press release appended to the underlying complaint, '[t]he formation of ESCA is not considered a merger, because [OLM and Saint Mary School] will cease to exist and a new corporation . . . will be formed. ESCA, however, will continue to be operated by the same three parishes [that operated OLM and Saint Mary School].'

"On February 28, 2018, shortly after the announcement of OLM's closing, some parents of students attending OLM, including some of the plaintiff parents, formed the plaintiff corporation, Our Lady of Mercy School of Madison, Inc., with the intent to form a new Catholic school in Madison that, as alleged in the complaint, would '[keep] the current mission and vision of OLM intact.'[5] The plaintiffs further alleged that, '[s]ince its founding, [the plaintiff corporation] has raised over $1 million in additional pledges to augment the endowment by [Rettich], filed for 501c (3) status,[6] developed a financial plan, identified a sponsor of independent Catholic schools and developed a curriculum. Additionally, [the plaintiff corporation] is in the process of hiring a principal and teachers for the school.' . . .

"In April, 2018, the plaintiffs initiated the underlying action. The complaint contained seven counts and incorporated by reference and attached a number of exhibits. Count one was brought on behalf of the plaintiff students and alleged that Rettich's bequest to OLM should be viewed as an endowment that resulted in a constructive trust benefiting the plaintiff students with the defendant acting as trustee. It asserted that the defendant has an equitable duty to convey the corpus of that alleged trust to the plaintiff corporation or, alternatively, back to Rettich's estate for distribution because the defendant 'would be unjustly enriched if it were permitted to retain the endowment and disseminate it at its own discretion and for purposes wholly unrelated to the operation and preservation of OLM or a rightful successor.' Count two, also brought on behalf of the plaintiff students, sounded in breach of fiduciary duty [and was] premised on the defendant's having closed OLM and its alleged misappropriation of the 'endowment' from Rettich. Counts three and four were brought by the plaintiff parents and effectively tracked the first two counts, sounding in constructive trust and breach of fiduciary duty. Counts five and six were brought by the plaintiff corporation and Derblom, respectively, and, as in the prior counts, alleged the existence of a constructive trust and an equitable duty on the part of the defen-

dant to convey any and all funds to the plaintiff corporation for the intended beneficiaries or, alternatively, to the estate. Finally, in count seven, Derblom asserted on behalf of the estate 'a legal and/or equitable interest in the endowment made to OLM, by reason of danger of loss or uncertainty' and sought a declaratory judgment 'determining [1] whether the endowment shall be conveyed to [the plaintiff corporation] or some other appropriate entity for the benefit of the [p]laintiffs; [and] [2] whether the endowment to OLM has lapsed with no clear successor and all funds shall be returned to [Rettich's estate] for dissemination to his rightful heirs at law.' " (Footnotes altered; footnote in original; footnotes omitted.) Id., 201–204.

The defendant filed a motion to dismiss, contending that none of the plaintiffs had standing to bring an action to enforce the terms of a completed charitable gift to a school because, under Connecticut law, only the attorney general has such standing. Id., 204. The plaintiffs objected to the motion to dismiss on the ground that the special interest exception to that rule applied. Id., 204–205. The trial court concluded that the special interest exception does not apply to outright charitable gifts and that, even if it did, the plaintiffs had failed to establish that the special interest exception applied to their claim. Id., 205–206. Accordingly, the court granted the defendant's motion to dismiss. Id., 205.

The plaintiffs then appealed to the Appellate Court, claiming that the trial court had incorrectly (1) "construed Rettich's bequest as an absolute or outright gift to OLM rather than as an endowment that created or resulted in some type of charitable trust benefiting the plaintiffs"; id., 208; and (2) "concluded that a common-law special interest exception to the rule that the state's attorney general has exclusive authority to bring an action to enforce Rettich's charitable gift is limited in Connecticut to actions involving charitable trusts and, thus, was inapplicable to confer standing on the plaintiffs in the present case involving a gift." Id., 212. The Appellate Court concluded that Rettich's bequest was an outright gift to OLM; id., 211–12, 217; and that the special interest exception did not apply in cases in which a charitable gift is unencumbered by specific restrictions on the use of the gift. Id., 217. Accordingly, the Appellate Court concluded that the trial court had correctly determined that the plaintiffs lacked standing to bring their claims and affirmed the judgment of the trial court. Id. This certified appeal followed. See footnote 2 of this opinion.

The plaintiffs claim on appeal that the Appellate Court incorrectly determined that they did not have standing to enforce the terms of Rettich's bequest to OLM under the special interest exception to the rule that the attorney general has exclusive authority to

enforce the terms of a charitable gift. In support of this claim, the plaintiffs contend that the Appellate Court incorrectly determined that (1) Rettich's bequest was an unrestricted gift to OLM, and (2) the special interest exception to the rule that the attorney general has exclusive authority to enforce the terms of charitable donations does not apply to unrestricted gifts. We disagree with the plaintiffs' claims.

We begin with the standard of review applicable to a ruling on a motion to dismiss. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *Cuozzo* v. *Orange*, 315 Conn. 606, 614, 109 A.3d 903 (2015).

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [When] a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Citation omitted; internal quotation marks omitted.) *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 318, 71 A.3d 492 (2013).[7]

Well established principles govern who has standing to enforce the terms of a charitable gift or trust. "At common law, a donor who has made a completed charitable contribution, whether as an absolute gift or in trust, had no standing to bring an action to enforce the terms of his or her gift or trust unless he or she had expressly reserved the right to do so. [When] property is given to a charitable corporation and it is directed by the terms of the gift to devote the property to a particular one of its purposes, it is under a duty, *enforceable at the suit of the [a]ttorney [g]eneral*, to devote the property to that purpose." (Emphasis in original; footnote omitted; internal quotation marks omitted.) *Carl J. Herzog Foundation, Inc.* v. *University of Bridgeport*, 243 Conn. 1, 5–6, 699 A.2d 995 (1997). "The theory underlying the power of the [a]ttorney [g]eneral to enforce gifts for a stated purpose is that a donor who attaches conditions to his gift has a right to have his intention enforced. . . .The donor's right, however, is enforceable *only* at the instance of the attorney general . . . and the donor himself has no standing to enforce the terms of his gift when he has not retained a specific right to control the property, such as a right of reverter, after relinquishing physical possession of it. . . . As a matter of common law, when a settlor of a trust or a donor of property to a charity fails specifically to provide for a reservation of rights in the trust or gift instrument, neither the donor nor his heirs have

any standing in court in a proceeding to compel the proper execution of the trust, except as relators. . . . There is no such thing as a resulting trust with respect to a charity. . . . [When] the donor has effectually passed out of himself all interest in the fund devoted to a charity, neither he nor those claiming under him have any standing in a court of equity as to its disposition and control." (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) Id., 7–8; see R. Chester et al., The Law of Trusts and Trustees (3d Ed. 2005) § 414, p. 47 ("[a]s a general rule, no private citizen can sue to enforce a charitable trust merely on the ground that he believes he is within the class to be benefited by the trust and will receive charitable or other benefits from the operation of the trust"). "Connecticut is among the majority of jurisdictions that have codified this common-law rule and has entrusted the attorney general with the responsibility and duty to 'represent the public interest in the protection of any gifts, legacies or devises intended for public or charitable purposes. . . .' General Statutes § 3-125." *Carl J. Herzog Foundation, Inc.* v. *University of Bridgeport*, supra, 7 n.3.

This court noted in *Carl J. Herzog Foundation, Inc.*, that there is an exception to the rule that the attorney general has exclusive authority to enforce the terms of a charitable trust for persons who have "a special interest in the enforcement of the charitable trust . . . ." (Internal quotation marks omitted.) Id., 8 n.4; see also id., 8–9 and n.4 (recognizing that "[f]iduciaries, such as trustees or cotrustees, have historically been deemed to have a special interest so as to possess standing" to enforce terms of charitable trust but rejecting claim that donor had standing to enforce terms of charitable gift); *Steeneck* v. *University of Bridgeport*, 235 Conn. 572, 588, 668 A.2d 688 (1995) (recognizing "a 'special interest' exception to the general rule that beneficiaries of a charitable trust may not bring suit to enforce the trust, but rather are represented exclusively by the attorney general," but rejecting plaintiff's claim that, as life trustee of university without power to vote or to manage university's affairs, she had standing to bring action challenging validity of contract entered into by university (internal quotation marks omitted)); *Grabowski* v. *Bristol*, 64 Conn. App. 448, 449, 451, 780 A.2d 953 (2001) (plaintiffs who owned property abutting municipal park that was subject to terms of testamentary charitable trust had special interest giving them standing to bring action to compel defendant to comply with terms of trust); *Russell* v. *Yale University*, 54 Conn. App. 573, 574, 579, 737 A.2d 941 (1999) (recognizing that person with special interest in charitable trust may have standing to bring action to enforce terms of trust but rejecting claim that heir of trust settlor, alumni donors and students had special interest in enforcing terms of charitable gift to university); 4 Restatement

(Third), Trusts § 94 (2), p. 4 (2012) ("[a] suit for the enforcement of a charitable trust may be maintained only by the [a]ttorney [g]eneral or other appropriate public officer or by a [cotrustee] or successor trustee, by a settlor,[8] *or by another person who has a special interest in the enforcement of the trust* (emphasis added; footnote added)); R. Chester et al., supra, § 414, p. 51 ("the courts have permitted private individuals, whose positions with regard to the charitable trust were more or less fixed, to sue for its enforcement"); cf. *Belcher* v. *Conway*, 179 Conn. 198, 202–204, 425 A.2d 1254 (1979) (trustees of charitable trust brought action seeking modification of trust pursuant to cy pres doctrine).

"The [special interest] concept and its application involve a balancing of policy concerns and objectives. The [special interest] requirement provides a safeguard for charitable resources and trustees by limiting the risk, and frequency, of potentially costly, unwarranted litigation;[9] but the recognition of [special interest] standing, in appropriate situations, is justified by society's interest in honoring reasonable expectations of settlors and the donor public and in enhancing enforcement of charitable trusts, in light of the limitations (of information and resources, plus other responsibilities and influences) inherent in [a]ttorney [g]eneral enforcement." (Footnote added.) 4 Restatement (Third), supra, § 94, comment (g), p. 9. Courts determining whether the special interest exception applies have considered a wide variety of factors, "including the remedy sought, the presence of fraud, the availability of the attorney general and the nature of the [benefited] class . . . ." M. Blasko et al., "Standing To Sue in the Charitable Sector," 28 U.S.F. L. Rev. 37, 76 (1993); see Restatement, Charitable Nonprofit Organizations § 6.05, p. 527 (2021).[10]

## I

Because whether the Appellate Court correctly determined that Rettich's gift to OLM was unrestricted has some bearing on whether the plaintiffs have special interest standing to bring this action, we first address that claim. The plaintiffs make two arguments in support of their claim that the gift was restricted. First, they contend that Rettich specified that the gift must be used only for OLM's "general uses and purposes," which the plaintiffs contend imposes a restriction. Second, they contend that the gift was restricted because Rettich specified that, if OLM became incapable of possessing or using the gift, the unspent portion should go to its "successor . . . ." We disagree with both contentions.

"The construction of a will presents a question of law to be determined in light of facts [that] are found by the trial court or are undisputed or indisputable. . . . [If] the issue before us concerns the court's legal conclusion regarding the intent of [a testator] as expressed

solely in the language of [a] will, we must decide that issue by determining, de novo, whether that language supports the court's conclusion. . . . Our primary objective in construing . . . [a] will is to ascertain and effectuate [the testator's] intent. . . . In searching for that intent, we look first to the precise wording employed by the [testator] in [the] will . . . [because] the meaning of the words as used by the [testator] is the equivalent of [his] legal intention—the intention that the law recognizes as dispositive. . . . The question is not what [he] meant to say, but what is meant by what [he] did say." (Citations omitted; internal quotation marks omitted.) *Canaan National Bank* v. *Peters*, 217 Conn. 330, 335–36, 586 A.2d 562 (1991).

We first address the plaintiffs' claim that Rettich intended to restrict the use of his gift to OLM when he specified that it must be used only for OLM's "general uses and purposes." This court has held that, when a donor makes a bequest for the donee's "general purposes," "the essence of his bequest . . . [clearly is] the attainment of the objectives for which the [donee] was organized. The [general purposes] language . . . does not manifest an intention to restrict the bequest . . . ." *Connecticut Children's Aid Society* v. *Connecticut Bank & Trust Co.*, 147 Conn. 554, 560, 163 A.2d 317 (1960). In other words, when the donor has specified that a gift must be used for the donee's "general uses and purposes," the only limitation on the use of a charitable gift is that the organization must use it in furtherance of "the duties imposed [on] it by its charter or articles of incorporation . . . ." G. Bogert & G. Bogert, The Law of Trusts and Trustees (2d Ed. Rev. 1992) § 324, p. 380; see id. ("[i]n the case of the absolute gift full ownership of the property given vests in the corporation, subject to the duties imposed [on] it by its charter or articles of incorporation" (emphasis omitted)). This limitation applies to *all* charitable gifts, regardless of whether it is expressly included in the instrument conferring the gift. Thus, if the plaintiffs were correct that Rettich's use of the language "general uses and purposes" constituted a restriction on the use of the gift, *all* charitable gifts would be "restricted," which would render the concept meaningless. We conclude, therefore, that Rettich's use of the "general uses and purposes" language did not evince any intent to restrict the bequest within the meaning of the relevant legal principles. To the contrary, it evinced an intent that the gift was unrestricted.

We also reject the plaintiffs' claim that Rettich intended to restrict the use of his gift to OLM when he specified that the gift should go to OLM's successor if OLM should cease to exist. The plaintiffs disagree with the Appellate Court's conclusion that this language was "commonplace testamentary verbiage intended to avoid a potential failure of the residuary bequest in the event that OLM had ceased to exist or changed its name *before*

Rettich died and before he had an opportunity to amend his will." (Emphasis in original.) *Derblom* v. *Archdiocese of Hartford*, supra, 203 Conn. App. 212. Instead, the plaintiffs argue that an unresolved question of fact exists as to whether Rettich intended that "commonplace" meaning or instead meant to express a specific intention that the unspent portion of the bequest would go to whichever entity is deemed to be OLM's successor if OLM ceased to exist *after* OLM took possession of the residue of Rettich's estate.

We conclude that the plaintiffs cannot prevail on their claim, even assuming that the plaintiffs are correct that there is a genuine issue of material fact as to whether Rettich intended that the unspent portion of his bequest to OLM would go to the entity that is deemed to be OLM's successor if OLM ceased to exist after taking possession of the bequest, and even assuming that there is a genuine issue of material fact as to whether Our Lady of Mercy School of Madison, Inc., is indeed OLM's "successor," as that term is used in Rettich's will. We note that the plaintiffs have not alleged that Our Lady of Mercy School of Madison, Inc., is OLM's successor corporation in the legal sense that it has succeeded to all of OLM's rights and obligations. See, e.g., *Larkin* v. *Burlington*, 172 Vt. 566, 569, 772 A.2d 553 (2001) ("[t]he boilerplate language 'successors and assigns,' when referring to corporations, ordinarily applies only when another corporation, through legal succession, assumes the rights and obligations of the first corporation"). Rather, they allege that, by specifying that the gift should go to OLM "or its successor," Rettich's will evinces his intent that, if OLM were to become incapable of possessing or using his bequest, the remainder of the bequest should be given to the entity the mission of which most closely approximates OLM's mission—i.e., the operation of a school for Catholic students in the town of Madison—and that entity is Our Lady of Mercy School of Madison, Inc. Thus, the plaintiffs are effectively contending that Rettich's will evinced an intent that Our Lady of Mercy School of Madison, Inc., should be the cy pres beneficiary of the bequest to OLM. See *Carl J. Herzog Foundation, Inc.* v. *University of Bridgeport*, supra, 243 Conn. 10 n.8 ("[t]he rule of [cy pres] is a rule for the construction of instruments in equity, by which the intention of the party is carried out *as near as may be*, when it would be impossible or illegal to give it literal effect" (emphasis in original; internal quotation marks omitted)); see also *Duncan* v. *Higgins*, 129 Conn. 136, 140, 26 A.2d 849 (1942) ("[o]rdinarily [when] an organization to which a charitable gift or devise is made is incapable of taking it, the question whether its payment to another organization will be permitted is determined [on] the basis of the applicability of the cy pres doctrine or doctrine of approximation; and that doctrine will be applied only [when] the court finds in the terms of the will, read in the light of sur-

rounding circumstances, a general intent to devote the property to a charitable use, to which the intent that it go to the particular organization named is secondary").

Even if the plaintiffs could establish that Rettich intended that the cy pres doctrine should be applied to his gift, however, they have not cited any authority for the proposition that proof of such intent means that there is an implied "restriction" on the trust or gift such that a potential cy pres beneficiary, or other beneficiaries of the original donee organization, has standing to initiate proceedings to enforce the intent.[11] Indeed, the plaintiffs have not referred to the cy pres doctrine at all in their briefs to this court. Because this claim is inadequately briefed, we decline to address it.[12] See, e.g., *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 33, 144 A.3d 420 (2016). We conclude, therefore, that the plaintiffs have failed to establish that Rettich's bequest to OLM was restricted.

II

Having concluded that Rettich's bequest to OLM was unrestricted, we next address the plaintiffs' claim that the Appellate Court incorrectly determined that the special interest exception to the rule that the attorney general has exclusive authority to enforce the terms of charitable donations does not apply to unrestricted gifts. Specifically, the plaintiffs contended in their complaint that Rettich's bequest to OLM resulted in a constructive trust benefiting the plaintiff students and parents, and thereby conferred on them a special interest in the enforcement of the bequest.[13] We conclude that the Appellate Court correctly determined that the exception does not apply under the specific facts and circumstances of the present case.

As the Appellate Court noted, "[t]he law recognizes a distinction between a donor who expresses an intent to make a donee a trustee and one who intends to make an absolute gift." *Derblom* v. *Archdiocese of Hartford*, supra, 203 Conn. App. 210. "In the case of a trust the legal title . . . is in the corporation [only], *subject to the duties imposed* [*on the trustees*] *by the terms of the trust instrument and by the law of charitable trusts* . . . ." (Emphasis altered.) G. Bogert & G. Bogert, supra, § 324, p. 380. Thus, a charitable trust by its very nature creates a narrowly defined class of persons who have a special interest in its enforcement or modification, namely, the trustees who have a legal obligation to administer the trust. See *Carl J. Herzog Foundation, Inc.* v. *University of Bridgeport*, supra, 243 Conn. 8–9 n.4; 4 Restatement (Third), supra, § 94 (2), p. 4 ("[a] suit for the enforcement of a charitable trust may be maintained . . . by a [cotrustee] or successor trustee"). In addition, if the instrument creating the trust identifies specific persons as beneficiaries, members of that class of persons may have a special interest in the enforcement of the trust sufficient to confer standing.

See 4 Restatement (Third), supra, § 94, comment (g) (1), p. 9 (when charitable trust is "designed so that . . . one or more identifiable persons will become entitled to benefits under the terms of the trust," particular charitable institution or identifiable individual may have standing to enforce terms of trust); R. Chester et al., supra, § 414, p. 51 ("the courts have permitted private individuals, whose positions with regard to the charitable trust were more or less fixed, to sue for its enforcement"); M. Blasko et al., supra, 28 U.S.F. L. Rev. 70 (to demonstrate special interest, potential plaintiff "must show that she is a member of a small identifiable class that the charity is designed to benefit"). For example, "if the purpose of a charitable trust is to pay the salary of the pastor of a particular church, the pastor has [special interest] standing (as does the church) to enforce the trust." 4 Restatement (Third), supra, § 94, comment (g) (1), p. 9. Similarly, "the purpose of a charitable trust to contribute to the costs of medical care for 'needy residents' of a specified small town ordinarily can be enforced by any reasonably qualified member of the community. So, too, if a college is trustee of a trust the terms of which direct that its income be used to provide [graduate study] scholarships each year to selected students graduating from the college, based on prescribed procedures and criteria, the trust purpose may be enforced by one or more of the current students who might reasonably expect to meet the criteria." Id., p. 10. It is significant that in none of these situations does the finding of a special interest sufficient to confer standing significantly undermine the primary purpose of the rule that the attorney general has exclusive authority to enforce the terms of a charitable trust or gift, namely, to limit the number of persons who have standing to initiate litigation. See id., p. 9; see also R. Chester et al., supra, § 414, p. 48.

Charitable gifts are different from trusts. "Frequently a gift is made to a charitable corporation, either without mention of any particular purpose or with a statement that the object is to aid one or all of the causes for which the corporation operates. . . . In the case of the absolute gift full ownership of the property given vests in the corporation, subject to the duties imposed [on] it by its charter or articles of incorporation and by the terms of any agreements it makes by contract or in its acceptance of a qualified gift. The [a]ttorney [g]eneral has the power, as a representative of the state and by quo warranto or other proceedings, to compel the corporation to perform these duties . . . ." (Emphasis omitted; footnotes omitted.) G. Bogert & G. Bogert, supra, § 324, pp. 379–81.

Thus, when a donor has made a gift to a charitable organization that is unrestricted by any contractual terms or qualifications, the organization is the sole beneficiary of the gift, and the only limitation on its use is that the organization must use it in furtherance of "the

duties imposed [on] it by its charter or articles of incorporation . . . ." Id., p. 380. There simply are no "terms" or "restrictions" for the benefit of particular persons to be enforced (unless, arguably, the charitable organization's charter or articles of incorporation identify specific individuals who are its exclusive beneficiaries). The plaintiffs have not identified, and our research has not revealed, a single case in which a court has held that the potential beneficiaries of a charitable organization have standing to bring an action to compel the organization to use an unrestricted gift in a specific manner.[14] See 4 Restatement (Third), supra, § 94, reporter's note to comment (g) (3), pp. 21–22 ("[a] disposition to [a charitable] institution *for a specific purpose* . . . creates a charitable trust of which the institution is the trustee, [in contrast to] an *outright devise or donation* to such an institution, *expressly or impliedly to be used for its general purposes*, which, although charitable, does not create a trust [that is subject to enforcement by a person having a special interest] as that term is used in this Restatement" (emphasis added; internal quotation marks omitted)).

Even if we were to assume that there may be exceptionally rare cases in which the beneficiary of a charitable organization could be found to have a special interest sufficient to confer standing to bring an action to force the organization to use an unrestricted gift in a specific manner, we conclude that this is not such a case.[15] Multiple courts, including the Appellate Court, have held that, because students enrolled in an educational institution constitute a constantly fluctuating group, to conclude that a particular student or group of students has standing to bring an action to enforce the terms of a trust created to benefit the institution would undermine the primary purpose of the rule that the attorney general has exclusive standing to bring such an action, namely, to limit the number of potential litigants. See *Trustees of Dartmouth College* v. *Woodward*, 17 U.S. (4 Wheat.) 518, 641, 4 L. Ed. 629 (1819) (class of college students is "fluctuating, and no individual among [the] youth has a vested interest in the institution, which can be asserted in a [c]ourt of justice," and, therefore, individual students would not have standing to enforce terms of trust through which college was created); *Russell* v. *Yale University*, supra, 54 Conn. App. 579 ("absent special injury to a student or his or her fundamental rights, students do not have standing to challenge the manner in which the administration manages an institution of higher education" or trustees' discretionary acts); *Miller* v. *Alderhold*, 228 Ga. 65, 69, 184 S.E.2d 172 (1971) ("[i]t is inconceivable that one [eighteen year old] boy or girl the day after his or her admission to a private college could go into court or through the [s]tate's [a]ttorneys, and seek to enjoin the trustees in the management and operation of the college, and ask for a receiver solely because he or

she was a student"); *Kolin* v. *Leitch*, 343 Ill. App. 622, 628–30, 99 N.E.2d 685 (1951) (students did not have special interest sufficient to confer standing to bring action to enforce terms of trust created for benefit of school); cf. *Kania* v. *Chatham*, 297 N.C. 290, 292, 254 S.E.2d 528 (1979) (unsuccessful applicant for college scholarship did not have special interest in enforcing terms of scholarship trust because he was "a member of a group comprised of hundreds of candidates from which the [t]rustees, in their sole discretion, selected recipients," and "[t]o grant [the] plaintiff standing to maintain [the] action would only open the door to similar actions by other unsuccessful nominees").[16] We find the reasoning of these cases persuasive, particularly as applied to an *unrestricted monetary gift* to an educational institution that can be used for any purpose consistent with the institution's charter or articles of incorporation. We further note that the plaintiffs in the present case have not claimed that OLM's use of Rettich's bequest has violated any terms of its charter or articles of incorporation. See M. Blasko et al., supra, 28 U.S.F. L. Rev. 64 (courts often consider nature and extent of alleged wrongdoing when determining whether plaintiff has standing to enforce terms of charitable trust). We conclude, therefore, that the plaintiff students and parents do not have a special interest sufficient to confer standing to bring an action to enforce Rettich's unrestricted gift to OLM.

In support of their claim to the contrary, the plaintiffs rely heavily on the Superior Court's decision in *Grabowski* v. *Bristol*, Superior Court, judicial district of New Britain, Docket No. CV-95-0468889-S (June 3, 1997) (19 Conn. L. Rptr. 623).[17] The issue in *Grabowski* was whether the plaintiffs—residents, taxpayers and citizens of the city of Bristol—had standing under the special interest exception to enforce the terms of a charitable trust establishing a municipal park. See *Grabowski* v. *Bristol*, supra, 19 Conn. L. Rptr. 623, 625–626. The trial court concluded that the plaintiffs, who owned property abutting the park, had such standing. See id., 626. In support of this conclusion, the court cited to *Kapiolani Park Preservation Society* v. *Honolulu*, 69 Haw. 569, 751 P.2d 1022 (1988) (*Kapiolani*). See *Grabowski* v. *Bristol*, supra, 626. In *Kapiolani*, the plaintiff, a nonprofit corporation, the members of which included persons who lived adjacent to and made frequent use of a public park that was the subject of a charitable trust, brought an action against, among others, the city and county of Honolulu, as trustee, to enforce the terms of the trust. See *Kapiolani Park Preservation Society* v. *Honolulu*, supra, 570–71. The Hawaii Supreme Court held that, "[when] a trustee of a public charitable trust is a governmental agency . . . and that agency does not file periodic accounts of its stewardship, and will not seek instructions of the court as to its duties, even though there is a genuine controversy as to its power

to enter into a particular transaction, and [when], in such a case, the attorney general as parens patriae, has actively joined in supporting the alleged breach of trust, the citizens of [Hawaii] would be left without protection, or a remedy, unless we hold, as we do, that members of the public, as beneficiaries of the trust, have standing to bring the matter to the attention of the court." Id., 572.

We conclude that the trial court's ruling in *Grabowski* is limited to the facts of that case. The primary case on which the trial court in *Grabowski* relied, *Kapiolani*, has been characterized as representing "the liberal end of the spectrum [of] cases granting [special interest] standing . . . ." (Internal quotation marks omitted.) 4 Restatement (Third), supra, § 94, reporter's note to comment (g) (1), p. 17. We disagree with these cases to the extent that they can be read to support the broad proposition that any member of the public may bring an action to enforce the terms of a charitable trust when there is a genuine controversy as to whether the terms of the trust have been breached and the attorney general has refused to bring an action to enforce the terms. Such a rule would be entirely inconsistent with the purpose of the rule that the attorney general has exclusive authority to enforce the terms of a charitable gift or trust, namely, to eliminate the risk and frequency of unwarranted litigation by limiting the scope of potential litigants. See id., § 94, comment (g), p. 9; R. Chester et al., supra, § 414, pp. 47–48. Instead, we conclude that *Grabowski* stands for the narrow proposition that persons who own land abutting a public park that is subject to the terms of a trust have a special interest sufficient to confer standing to bring an action to enforce those terms. Thus, *Grabowski* does not support the plaintiffs' claim that students and their parents have standing under the special interest exception to enforce an unrestricted monetary gift to an educational institution.

For the foregoing reasons, we conclude that the Appellate Court correctly determined that Rettich's bequest to OLM was unrestricted and that the plaintiffs did not have standing under the special interest exception to bring an action to enforce the bequest. The Appellate Court, therefore, properly affirmed the judgment of the trial court dismissing this action.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] The plaintiffs are Maria J. Derblom, in her capacity as the executrix of the estate of Fred H. Rettich; eleven former students of Our Lady of Mercy School (OLM), a defunct Catholic school in Madison, and their parents; and Our Lady of Mercy School of Madison, Inc., which operates a private school that purports to be the successor of OLM. The eleven student plaintiffs are Luke Ciocca, John Ciocca, Julia Coric, Amanda Coric, Vladimir Coric III, Mia Lombardi, Thomas Piagentini, Jack Piagentini, Kathryn Piagentini, Julianna Picard, and Alessandra Picard. The parent plaintiffs are Stephen Ciocca, Jacqueline Ciocca, Vladimir Coric, Ann Coric, Tom Lombardi, Roberta Lombardi, Joe Piagentini, Kelly Piagentini, John Picard, and Tara Picard.

[2] We granted the plaintiffs' petition for certification to appeal, limited to the following issue: "Did the Appellate Court correctly conclude that the plaintiffs, as putative beneficiaries of a testamentary bequest, did not have standing to enforce the terms of that bequest under the 'special interest' exception to the rule giving the state's attorney general exclusive enforcement authority?" *Derblom* v. *Archdiocese of Hartford*, 336 Conn. 938, 938–39, 249 A.3d 354 (2021).

[3] "A residuary clause disposes of any remaining estate property after all other specific bequests, devises and obligations of the estate are satisfied. See *Warner* v. *Merchants Bank & Trust Co.*, 2 Conn. App. 729, 732, 483 A.2d 1107 (1984). The clause in Rettich's will provided: 'All the rest, residue, and remainder of my property of every kind and description, real, personal and mixed, whatever situated (all of which is hereinafter referred to as "[r]esidue"), remaining after the payment of estate, inheritance, succession, transfer and death taxes or duties, in accordance with [a]rticle VII hereof (but excluding any property over which I may have a power of appointment at my death), I give and bequeath, in memory of Fred H. [and] Rosa Rettich, to [OLM], 149 Neck Road, Madison, Connecticut, or its successor, for its general uses and purposes.' " *Derblom* v. *Archdiocese of Hartford*, supra, 203 Conn. App. 200 n.5.

[4] "Payment was by check dated July 8, 2015, and made payable to OLM. According to the complaint, those funds have 'come under the possession and/or control of the [d]efendant . . . .' In an affidavit submitted by the defendant with its motion to dismiss, the Reverend Daniel McLearen, a diocesan priest serving at one of the two local parishes in Madison and Guilford that 'jointly-sponsored' OLM, averred that the funds from Rettich's estate 'were deposited in an account established by [the two parishes] in the name of [OLM]' and that McLearen is 'the sole signatory on that account.' " *Derblom* v. *Archdiocese of Hartford*, supra, 203 Conn. App. 201 n.7. As the Appellate Court noted, the current status of this account is unclear from the record and has no bearing on the issues before us in this appeal. See id.

[5] "The record indicates that the plaintiff corporation [subsequently] founded a new private school in Madison named Our Lady of Mercy Preparatory Academy. The plaintiff corporation asserts that this new school is an 'independent Catholic' school. The defendant disputes this characterization. In a letter from the Archbishop of Hartford to the First Selectman of Madison, the Archbishop, citing canon law, explained that 'no school may bear the title *Catholic school* without the consent of the competent ecclesiastical authority,' that he, as that authority, had not consented to a new Catholic school in the area in question, and that, '[t]herefore, any new OLM school is not, and should not present itself, as a Catholic school.' . . . A copy of the letter was appended as an exhibit to the defendant's reply to the plaintiffs' opposition to the motion to dismiss." (Emphasis in original.) *Derblom* v. *Archdiocese of Hartford*, supra, 203 Conn. App. 202 n.9. As the Appellate Court noted, the religious status of Our Lady of Mercy Preparatory Academy has no bearing on the issues before us in this appeal. See id.

[6] "Section 501 (c) (3) of title 26 of the United States Code is the provision of the Internal Revenue Code that allows for federal tax exemption for certain nonprofit organizations. Donors who make charitable contributions to § 501 (c) (3) organizations may also be entitled to a deduction for federal income tax purposes. See 26 U.S.C. § 170 (2018)." *Derblom* v. *Archdiocese of Hartford*, supra, 203 Conn. App. 203 n.10.

[7] When a complaint is supplemented by undisputed facts evidenced in the record, "the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings. . . . If, however, the defendant submits either no proof to rebut the plaintiff's jurisdictional allegations . . . or only evidence that fails to call those allegations into question . . . the plaintiff need not supply counteraffidavits or other evidence to support the complaint, but may rest on the jurisdictional allegations therein." (Internal quotation marks omitted.) *Cuozzo* v. *Orange*, supra, 315 Conn. 615–16.

[8] As we have indicated, the rule in Connecticut is that the settlor of a charitable trust does not have automatic standing to enforce the terms of the trust unless the settlor has reserved a property interest in the trust. See

*Carl J. Herzog Foundation, Inc.* v. *University of Bridgeport*, supra, 243 Conn. 7.

[9] See also *Hooker* v. *Edes Home*, 579 A.2d 608, 614 (D.C. App. 1990) ("policy reasons for limiting standing" are "to prevent vexatious litigation and suits by irresponsible parties who do not have a tangible stake in the matter" (internal quotation marks omitted)); *Sarkeys* v. *Independent School District No. 40, Cleveland County*, 592 P.2d 529, 534 (Okla. 1979) ("[i]f a third party were permitted to sue as a matter of right, the charity could be subjected to frequent, unreasonable and vexatious litigation, the court dockets could become clogged, and the trust assets could be wasted in unnecessary [attorney's] fees"); R. Chester et al., supra, § 414, p. 48 (purpose of rule that attorney general has exclusive authority to enforce terms of charitable trust is "so that the trustees may not be vexed by frequent, ill-considered suits leading to unnecessary litigation"); M. Blasko et al., "Standing to Sue in the Charitable Sector," 28 U.S.F. L. Rev. 37, 52 (1993) ("[s]trict standing rules were designed to prevent vexatious litigation by disinterested parties" (internal quotation marks omitted)).

[10] Section 6.05 of the Restatement of Charitable Nonprofit Organizations provides in relevant part: "A private party has a special interest for purposes of . . . bringing or intervening in an action to enforce the purposes to which charitable assets are devoted and the administrative terms that govern charitable assets . . . only upon demonstrating all of the following conditions:

"(a) the state attorney general is not exercising the office's authority to protect the public's interest in the charitable assets at issue . . .

"(b) the charitable assets at issue will not be protected without the grant of standing to the private party;

"(c) the alleged misconduct is egregious or the circumstances are serious and exigent;

"(d) the relief sought is appropriate to enforce the purposes of the charity or the purposes to which particular charitable assets are devoted; and

"(e) the private party has a substantial connection to:

"(1) the matter at issue and the charity . . . or

"(2) the charitable assets at issue . . . ." Restatement, Charitable Nonprofit Organizations, supra, § 6.05, p. 527.

[11] Our research reveals persuasive authority for the proposition that a potential cy pres beneficiary does *not* have standing to initiate a cy pres proceeding, at least in the absence of a special interest. See *Arman* v. *Bank of America, N.T. & S.A.*, 74 Cal. App. 4th 697, 705, 88 Cal. Rptr. 2d 410 (1999) ("a charitable corporation even if named as a possible successor trustee by the dissolving corporation does not have, as a possible beneficiary under application of cy pres, an interest different in kind from that of the public generally, which is represented exclusively by the [a]ttorney [g]eneral" (internal quotation marks omitted)), review denied, California Supreme Court, Docket No. S082593 (December 15, 1999); *In re Veterans' Industries, Inc.*, 8 Cal. App. 3d 902, 921, 88 Cal. Rptr. 303 (1970) (applying principle that "[b]eneficiaries of a charitable trust, unlike beneficiaries of a private trust, are ordinarily indefinite and therefore unable to enforce the trust [on] their own behalf" to potential cy pres beneficiaries (internal quotation marks omitted)); *In re Trustco Bank*, 33 Misc. 3d 745, 754, 929 N.Y.S.2d 707 (2011) (potential cy pres beneficiary "lack[s] standing to commence a cy pres proceeding unless it is the named trustee or is in possession of the subject disposition"); cf. *Belcher* v. *Conway*, supra, 179 Conn. 202–204 (trustees of charitable trust brought action seeking modification of trust pursuant to cy pres doctrine).

[12] Because the primary relief that the plaintiffs are seeking is, in effect, a declaration that Our Lady of Mercy School of Madison, Inc., is the cy pres beneficiary of Rettich's gift, it is arguable that our conclusion that the plaintiffs have failed to adequately brief the scope and contours of the cy pres doctrine is dispositive of their entire claim and that we need not address their contention that the special interest exception applies to unrestricted charitable gifts. Nevertheless, because the sole issue that the parties address in their briefs is whether the special interest exception applies to unrestricted gifts, we address that issue rather than disposing of the case on the basis of an issue that was not briefed.

[13] As we explained in part I of this opinion, the plaintiffs also claim that Our Lady of Mercy School of Madison, Inc., has a special interest in enforcing Rettich's bequest as OLM's "successor." We have rejected that claim as inadequately briefed. The plaintiffs' counsel conceded at oral argument before this court that Derblom, in her capacity as the executrix of Rettich's

estate, does not have standing to bring this action. See footnote 14 of this opinion.

[14] The plaintiffs' reliance on *Smithers* v. *St. Luke's-Roosevelt Hospital Center*, 281 App. Div. 2d 127, 723 N.Y.S.2d 426 (2001), is misplaced. The court in *Smithers* concluded that a *donor* had standing under the special interest exception to enforce the terms of a gift to a charitable organization *that was subject to numerous restrictions*. See id., 130 (describing restrictions). In the present case, the plaintiffs claim only that the plaintiff students and parents, and Our Lady of Mercy School of Madison, Inc., have standing to bring this action. The plaintiffs' counsel conceded at oral argument before this court that donors, which would include Derblom, in her capacity as the executrix of Rettich's estate, do not have standing to enforce the terms of a restricted or unrestricted gift to a charitable organization or a trust under Connecticut law; see *Carl J. Herzog Foundation, Inc.* v. *University of Bridgeport*, supra, 243 Conn. 5; and the plaintiffs have not requested that we reconsider that rule in light of more modern developments. See 4 Restatement (Third), supra, § 94, reporter's note to comment (g) (3), p. 20 ("[T]he settlor's [special interest] standing stated in [s]ubsection (2) [of § 94] and in this [c]omment represents a departure from the general insistence of traditional trust doctrine that the settlor, as such, lacks standing to enforce a charitable trust . . . . There is . . . impressive and growing authority . . . for the contrary proposition [that, unlike under the traditional rule, donors have standing to enforce gifts to charitable organizations] . . . . Given the historical underenforcement of charitable trusts in both England and the United States, it would seem that allowing the settlor to enforce his or her own trust might well be a step in the right direction . . . [and] a small price to pay for the settlor's generosity. The risk of repetitious or harassing litigation, which underlies the requirement that one who seeks to enforce a charitable trust have a special interest in doing so, seems quite low insofar as the settlor is concerned." (Citations omitted; internal quotation marks omitted.)).

[15] Indeed, the defendant does not ask this court to adopt a categorical rule barring the application of the special interest exception to unrestricted charitable gifts but recognizes that, because the determination of special interest standing is highly fact specific, we should limit our consideration to the specific facts and circumstances of the present case.

[16] There is some authority to the contrary. See *Jones* v. *Grant*, 344 So. 2d 1210, 1212 (Ala. 1977) ("the interest of the students, staff and faculty as beneficiaries in the financing of the educational institution with which they are associated is a sufficient special interest to entitle them to bring suit"); *Dominy* v. *Stanley*, 162 Ga. 211, 215–16, 133 S.E. 245 (1926) (patrons and former patrons of school had standing to bring action to enforce terms of trust requiring trustees to use land for school purposes). We note that there are innumerable cases applying the special exception doctrine, and, given the unavoidably subjective nature of the balancing process that courts employ when determining whether the doctrine applies, it would probably be possible to identify cases supporting almost any claim under the doctrine. See M. Blasko et al., supra, 28 U.S.F. L. Rev. 74 (noting that "various [case specific] facts and subjective factors . . . can influence a court's decisions" and that, "[b]ecause the law regarding standing to sue in the charitable sector is in flux, the courts have more room than usual to decide the issue based on whether a judge feels that a plaintiff deserves a chance to present her case"). The Alabama decision in *Jones* has been distinguished from the cases in which courts have held that students do not have a special interest in enforcing the terms of a charitable trust for the benefit of an educational institution on the ground that the plaintiffs in *Jones* raised serious allegations of fraud. See *Jones* v. *Grant*, supra, 1211; see also M. Blasko et al., supra, 65. Several other cases in which students and local citizens have been found to have standing to bring an action to enforce the terms of a trust benefiting an educational institution are distinguishable either because the issue of special interest standing was not raised; see *Greene* v. *Thompson*, 227 Ark. 1089, 305 S.W.2d 136 (1957); *Duffee* v. *Jones*, 208 Ga. 639, 68 S.E.2d 699 (1952); *Thompson* v. *Hale*, 123 Ga. 305, 51 S.E. 383 (1905); or because standing was found not on the basis of a special interest but, rather, on the basis of the principle that, when "the parties are numerous, and it is impracticable to bring them all before the court within a reasonable time, one or more may sue or defend for the benefit of all." (Internal quotation marks omitted.) *Conner* v. *Heaton*, 205 Ark. 269, 274, 168 S.W.2d 399 (1943).

[17] We assume that the plaintiffs rely on the decision of the trial court in *Grabowski* because the Appellate Court's opinion in a subsequent appeal

in that case dealt with the issue of standing somewhat summarily. See *Grabowski* v. *Bristol*, supra, 64 Conn. App. 451 (summarily agreeing, without any analysis or citation to authority, with trial court's conclusion that "the allegations of the plaintiffs' complaint demonstrated that the plaintiffs had a special interest in [enforcing the terms of a trust creating a public park] because, unlike members of the general public, their property adjoined [the park]").

———————————————